Filed 1/22/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JAYONE FOODS, INC., | B282674 |
| Cross-Complainant and Appellant, | (Los Angeles County Super. Ct. No. BC569190) |
| v. | |
| AEKYUNG INDUSTRIAL CO. LTD., | |
| Cross-Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elizabeth Allen White, Judge.  Reversed.

Murchison & Cumming, Edmund G. Farrell, and Eric P. Weiss for Cross-Complainant and Appellant.

Covington & Burling, Nathan E. Shafroth, and Ashley M. Simonsen for Cross-Defendant and Respondent.

———————————

This appeal arises out of a wrongful death suit brought by the family of Sunja An against a number of business entities, alleging that a humidifier cleaning agent manufactured in Korea and sold in California caused An's death. One of the defendants named in the action is appellant Jayone Foods, Inc. (Jayone), a California importer and distributor of Korean consumer products that sold the cleaning agent to a Los Angeles retail store where An allegedly purchased the product. Jayone in turn filed a cross-complaint against respondent Aekyung Industrial Co. Ltd. (Aekyung), a Korean manufacturer and distributor of personal care and household products that sold the cleaning agent to Jayone. The trial court granted Aekyung's motion to quash service of summons for lack of personal jurisdiction. We reverse.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. The Complaint and Cross-Complaint

On January 13, 2015, the adult children of decedent Sunja An (Plaintiffs) filed a wrongful death and survivor action against SK Chemicals Co., Ltd., SK Chemical America, Inc., SK U.S.A., Inc., and Kim's Home Center, Inc. Plaintiffs later amended the complaint to name additional business entities as defendants, including Aekyung, Aekyung S.T. Co., Ltd., Jayone, and Jayone Homeware, Inc. According to the second amended complaint, in 2005, An began to maintain and clean her humidifier with the Aekyung Humidifier Cleaning Agent manufactured by the SK Chemical defendants and distributed by the Aekyung defendants. Between 2006 and 2012, An purchased the Aekyung Humidifier Cleaning Agent from Kim's Home Center in Los Angeles. In 2008, An developed a cough for which she sought medical attention. The cough worsened over time, and An subsequently

2

developed difficulty breathing. An was diagnosed with idiopathic pulmonary fibrosis in 2012, and died from the disease on February 11, 2013. Plaintiffs allege that An's death was caused by her long-term and frequent use of the Aekyung Humidifier Cleaning Agent, and on that basis, assert claims for products liability and negligence.[1]

On December 2, 2015, Jayone filed a cross-complaint against Aekyung (a Korean corporation), Kim's Home Center (a California corporation), and Woosung America Corporation (Woosung) (a California corporation).[2] The cross-complaint alleges claims for equitable indemnity, contribution, and declaratory relief with respect to any judgment rendered against Jayone and in favor of Plaintiffs.

## II. Aekyung's Motion to Quash Service of Summons

On July 25, 2016, Aekyung specially appeared in the action and filed a motion to quash service of summons on Jayone's cross-complaint for lack of personal jurisdiction. The motion was supported by various declarations and exhibits, including declarations from Yeun Kyu Lee (Lee), Aekyung's Vice President responsible for overseeing domestic and international sales. As described by Lee, Aekyung is a manufacturer and distributor of

---

[1] Plaintiffs never served the second amended complaint on the Aekyung defendants.

[2] Jayone also named SK Chemicals Co., Ltd. (a Korean corporation) as a defendant in its cross-complaint, but later dismissed its cross-complaint as to this defendant without prejudice.

household and personal care products.[3]  The company is incorporated in the Republic of South Korea with its principal place of business in Seoul, Korea.  Aekyung primarily targets the Korean domestic market for the sale of its products, and has never had a specific sales or business unit targeting any United States market.  Aekyung has never been qualified to do business in California, has never paid taxes in California, and has never maintained any offices, agents, employees, facilities, property, or bank accounts in California.  Additionally, Aekyung has never advertised any of its products in California, nor has it controlled the advertising or marketing activities of any distributor or retailer of its products in California.  Aekyung has never created any distribution system for the purpose of bringing its products into California, or employed any sales agent in California for the distribution of its products in the State.

From 2002 to 2011, Aekyung distributed a humidifier cleaning agent that was manufactured exclusively for Aekyung in Korea by SK Chemicals Co., Ltd., a Korean corporation.  The name of the product was the Aekyung Humidifier Mate, and the product bore labels written solely in the Korean language.  Aekyung never advertised the Humidifier Mate outside of Korea, or targeted any specific market in the United States for the sale of the product.  Aekyung primarily sold the Humidifier Mate to third-party distributors in Korea.  Aekyung was aware that some of its Korean distributors intended to sell the product to importers in other countries, including the United States, and that Woosung was one possible United States importer.  Aekyung

---

[3]     Between 2005 and 2011, Aekyung's total annual sales ranged from $269 million to $345 million.

4

did not know, however, whether any of its Korean distributors in fact exported the Humidifier Mate to the United States, or whether any sales of the product to consumers in the United States resulted from any such exports.

In April 2006, Jayone contacted Aekyung to place an order for the import of 200 boxes of the Aekyung Humidifier Mate, along with a number of other Aekyung products. Each box contained 12 bottles of the humidifier cleaning agent. The cost of the Humidifier Mate was $3,720 and the total cost of the April 2006 order was $24,916. Aekyung shipped the goods to a United States port of entry in Los Angeles, and Jayone assumed control of the shipment upon its arrival in the United States. In January 2007, Jayone again contacted Aekyung to order 100 more boxes of the Humidifier Mate, along with one other product. The total cost of the January 2007 order was $2,511, and $1,860 of that cost was for the Humidifier Mate. Aekyung delivered the second set of goods to a shipping company in Busan, Korea, and Jayone then arranged for the goods to be shipped to a port of entry in Los Angeles. Aekyung had no control over the final destination of the second shipment after it was delivered to Busan. At the time it filled Jayone's orders, Aekyung was aware that Jayone distributed goods throughout the United States, but did not know if either of those orders resulted in the sale of the Humidifier Mate to any consumers in California. Apart from the two sales made to Jayone in 2006 and 2007, Aekyung never directly sold the Humidifier Mate to any distributor or retailer in California or elsewhere in the United States.

## III. Jayone's Opposition to the Motion to Quash

Jayone filed an opposition to the motion to quash. Jayone argued that Aekyung was subject to specific personal jurisdiction in California because (1) the company purposefully availed itself of the privilege of conducting business in the State, (2) the claims in Plaintiffs' action arose out of or related to Aekyung's California contacts, and (3) the exercise of jurisdiction over Aekyung would be reasonable.[4]

The opposition was supported by a declaration from Ik Tae Kim (Kim), the Senior Director of Jayone. According to Kim, Jayone is based in Paramount, California, and is a distributor of Korean consumer products. Between June and November 2005, Jayone purchased a variety of Aekyung products directly from Woosung, including 20 boxes of the Aekyung Humidifier Mate. Kim was later contacted by Sung Hoe (Milky) Kim, the Assistant Manager for Aekyung's Overseas Business Department, to discuss establishing a business relationship under which Jayone would serve as an importer and distributor of Aekyung's consumer products. As a result of this contact, Jayone began purchasing products directly from Aekyung. Aekyung sold and shipped its products to Jayone in California on several occasions between 2006 and 2010. The products were delivered by ship from Busan, Korea to the Ports of Los Angeles and Long Beach in California. During this period, representatives from Jayone and Aekyung also communicated with each other on a regular basis by telephone, email, and purchase orders.

---

[4] Jayone also asserted that Aekyung was subject to general jurisdiction in California, but later abandoned that argument and does not raise it on appeal.

As part of the parties' new business relationship, Aekyung representatives traveled to California and visited Jayone's facility in Paramount in September 2006. During this visit, Kim personally met with the Aekyung representatives, including Milky Kim, to discuss Aekyung's desire to sell more of its products to Jayone. A Jayone representative also drove the Aekyung representatives to at least one retail store in Los Angeles to allow the Aekyung representatives to inspect the store, observe how Aekyung products were being displayed, and observe the store's clientele.

Jayone purchased a total of 300 boxes of the Aekyung Humidifier Mate directly from Aekyung between April 2006 and January 2007. The products were delivered to Jayone through the Port of Los Angeles. Between 2005 and 2007, Jayone sold the Aekyung Humidifier Mate to retail stores in the Los Angeles area that specialize in selling Korean-made consumer products, including Kim's Home Center. Jayone sold a total of 55 boxes of the Aekyung Humidifier Mate to Kim's Home Center between December 2006 and November 2007. The Aekyung Humidifier Mate that Jayone sold to Kim's Home Center included both product it had purchased directly from Woosung and product it had purchased directly from Aekyung.

Jayone also supported its opposition with testimony and exhibits from Lee's deposition. Lee admitted that, when Aekyung sold its products to Jayone, Aekyung was aware that Jayone was based in California. The invoices that Aekyung prepared for the sale of the Humidifier Mate to Jayone listed Jayone's business address in Paramount, California, and identified the final destination for the goods as Los Angeles. Lee also testified that, between 2005 and 2012, Aekyung directly sold its products (not

7

including the Humidifier Mate) to 10 distributors in the United States, at least five of which were located in California. During that period, Aekyung generated $3.07 million in sales revenue for products that it sold to its United States distributors, and at least $1.78 million in revenue for products that it sold to United States distributors with a California shipping address.

## IV. The Order Granting the Motion to Quash

On March 17, 2017, the trial court granted Aekyung's motion to quash service of summons and dismissed Jayone's cross-complaint as to Aekyung. The court concluded that Jayone had failed to meet its burden of showing that there was a sufficient basis to exercise either general or specific personal jurisdiction over Aekyung.

With respect to specific jurisdiction, the trial court found that Jayone had demonstrated that Aekyung purposefully availed itself of the benefits of doing business in California because Aekyung "direct[ed] economic activity" to the State by "shipping units of [the] Aekyung Humidifier Mate to Jayone Foods in California." The court found, however, that Jayone had not shown that the controversy arose out of or related to Aekyung's California contacts because Jayone failed to establish that Sunja An "purchased and was exposed to the bottles which were shipped by Aekyung . . . to Jayone Foods in April 2006 and January 2007." The court noted that "[i]t may be that [An] purchased bottles which were not from those April 2006 and/or January 2007 shipments, but instead were from other shipments into California as to which Aekyung cannot be said to have purposefully availed itself of the forum benefits." The court also noted that, while Plaintiffs' complaint alleged that An started using the Aekyung Humidifier Agent in 2005, and used it on a

8

regular basis from 2006 through 2012, "the only evidence of purposeful availment pertains to two shipments – April 2006 and January 2007 – over that six year period." Following the trial court's ruling, Jayone filed a timely notice of appeal.

## DISCUSSION

On appeal, Jayone challenges the trial court's order granting Aekyung's motion to quash service of summons on the cross-complaint. Jayone contends the motion should have been denied because it met its burden of demonstrating that Aekyung was subject to specific jurisdiction in California, and Aekyung failed to show that the exercise of jurisdiction was unreasonable.[5]

## I.    Governing Legal Principles

"California courts may exercise personal jurisdiction on any basis consistent with the Constitution of California and the United States. (Code Civ. Proc., § 410.10.) The exercise of jurisdiction over a nonresident defendant comports with these Constitutions 'if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate "'traditional notions of fair play and substantial justice.'""

---

[5]    In granting the motion to quash, the trial court sustained a number of Aekyung's objections to the evidence submitted by Jayone in support of its opposition. Jayone does not challenge any of the trial court's evidentiary rulings on appeal. Thus, any claim of error in that regard has been forfeited, and we do not consider any of the evidence that was excluded by the trial court. (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 [appellant's failure to properly challenge the trial court's evidentiary rulings forfeits the issue on appeal; *Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1492, fn. 14 [same].)

[Citation.]" (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*).) "[T]he minimum contacts test asks 'whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.' [Citation.] The test 'is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.' [Citation.]" (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1061 (*Snowney*).)

"Personal jurisdiction may be either general or specific. A nonresident defendant may be subject to the general jurisdiction of the forum if his or her contacts in the forum state are 'substantial . . . continuous and systematic.' [Citations.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 (*Vons*).) "If the nonresident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, he or she still may be subject to the specific jurisdiction of the forum. . . ." (*Id.* at p. 446.) "When determining whether specific jurisdiction exists, courts consider the "'relationship among the defendant, the forum, and the litigation.'" [Citation.] A court may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum"' [citation]; and (3) '"the assertion of personal jurisdiction would comport with 'fair play and substantial justice'"' [citation]." (*Pavlovich, supra*, 29 Cal.4th at p. 269.)

"'When a defendant moves to quash service of process' [on jurisdictional grounds], 'the plaintiff has the initial burden of

10

demonstrating facts justifying the exercise of jurisdiction.' [Citation.] 'If the plaintiff meets this initial burden, then the defendant has the burden of demonstrating "that the exercise of jurisdiction would be unreasonable."' [Citation.]" (*Snowney*, *supra*, 35 Cal.4th at p. 1062.) "When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence. [Citation.] When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record. [Citation.]" (*Vons*, *supra*, 14 Cal.4th at p. 449.) Here, because Jayone does not contend that Aekyung is subject to California's general jurisdiction, we need only consider whether specific jurisdiction over Aekyung exists. We conclude that it does.

## II. Purposeful Availment

We first consider whether Aekyung purposefully availed itself of the privilege of doing business in California. Given the evidence of Aekyung's direct sales of its consumer products to distributors based in California, including Jayone, we conclude that Jayone has established purposeful availment.

"'""The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs [its] activities toward the forum so that [it] should expect, by virtue of the benefit [it] receives, to be subject to the court's jurisdiction based on" [its] contacts with the forum.' [Citation.] Thus, purposeful availment occurs where a nonresident defendant "'purposefully direct[s]" [its] activities at residents of the forum' [citation], "'purposefully derive[s] benefit" from' its activities in the forum [citation], 'create[s] a "substantial

11

connection" with the forum' [citation], "'deliberately" has engaged in significant activities within' the forum [citation], or 'has created "continuing obligations" between [itself] and residents of the forum' [citation]. By limiting the scope of a forum's jurisdiction in this manner, the "'purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. . . .' [Citation.] Instead, the defendant will only be subject to personal jurisdiction if "'it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the state.'" [Citation.]" (*Snowney*, *supra*, 35 Cal.4th at pp. 1062-1063.)

In *Secrest Machine Corp. v. Superior Court* (1983) 33 Cal.3d 664 (*Secrest*), an injured employee brought a products liability action in California against the Virginia manufacturer of a machine that was used at his employer's California factory. The manufacturer did not maintain any offices, or have any agents, representatives, employees, or property in California. (*Id.* at p. 667.) The employer had heard about the manufacturer through word of mouth, sent a representative to view similar machines in operation at another company's plant in California, and then sent the same individual to Virginia to negotiate the purchase of the machine. (*Ibid.*) After the Virginia visit, the employer continued negotiations from California by both phone and mail, and upon reaching an agreement, mailed a purchase order for the machine at a price of $115,116. (*Id.* at pp. 667-668.) The employer took delivery of the machine in Virginia, although the parties' contract conditioned acceptance on satisfactory

12

performance in California.  (*Id*. at p. 168)  The parties did not have a formal maintenance agreement, but the manufacturer provided such assistance on request.  (*Ibid*.)  The manufacturer twice sent advertisements to the employer following the sale of the machine.  (*Ibid*.)

The California Supreme Court in *Secrest* concluded that the manufacturer purposefully had availed itself of the California forum by engaging in a direct sale of a product to a California business for use in California.  (*Secrest, supra*, 33 Cal.3d at pp. 670-672.)  The Court explained that the manufacturer's actions, including those that occurred outside of California, "were designed to consummate a business arrangement in which [the manufacturer] would profit financially by selling its product for use in California.  Although [the employer] initially approached [the manufacturer], the sale was a deliberate act by [the manufacturer] which generated substantial gross income and constituted economic activity within California 'as a matter of commercial actuality.'" (*Id*. at p. 671.)  The Court also noted that the manufacturer's contacts with California did not cease with the installation of the machine at the employer's business; rather, the manufacturer continued to provide service assistance and sent advertisements to the employer.  (*Ibid*.)  Therefore, "the sale of the machine to [the employer] was not 'simply an isolated occurrence' but involved 'efforts of the manufacturer . . . to serve, . . . the market for its product' in California and should have caused [the manufacturer] to anticipate being haled into a California court to defend an action arising from an alleged defect in its product.  [Citation.]" (*Ibid*., fn. omitted.)

Relying on *Secrest*, the Court of Appeal in *Luberski, Inc. v. Oleificio F.LLI Amato S.R.L.* (2009) 171 Cal.App.4th 409

(*Luberski*) concluded that an Italian company that entered into a direct sales contract with a California business purposefully had availed itself of the California forum.  The plaintiff, a California company, filed a breach of contract action against the defendant, an Italian olive oil producer, after the defendant failed to ship 12,000 cases of olive oil purchased by the plaintiff for $406,000. (*Id*. at p. 412.)  The defendant had no employees, assets, bank accounts, or offices in California.  (*Id*. at p. 413.)  Although the defendant had sold olive oil to a small number of California customers, it provided no services in California; rather, its sales activity solely consisted of accepting purchase orders, preparing invoices, and then shipping the products to the closest harbor in California.  (*Ibid*.)  The plaintiff's unsolicited purchase order was the parties' first and only business dealing.  (*Ibid*.)

In concluding the defendant was subject to specific personal jurisdiction in California, the Court of Appeal in *Luberski* noted that the parties' "contract negotiations were conducted via long-distance communications with the implicit understanding that the goods were only useful to [the plaintiff] if they were delivered to California." (*Luberski*, *supra*, 171 Cal.App.4th at p. 419.)  The defendant also "maintained responsibility for the goods until they arrived in California," and thus, "had the expectation that the goods it was placing in interstate commerce would be utilized in California." (*Ibid*.)  The court reasoned:  "This is not a case of California tourists bringing olive oil home from Italy, or a third party distributor shipping [the defendant's] olive oil to California without the specific knowledge of [the defendant].  [The defendant] received the purchase order and was presented with the option of completing a substantial transaction with a California entity in California, which required delivery of goods

14

to California.  [The defendant] opted to accept this order.  The totality of facts supports a finding that [the defendant] purposefully availed itself of the benefits of the forum."  (*Ibid*.)

In reaching its holding, the *Luberski* court distinguished the decision in *Carretti v. Italpast* (2002) 101 Cal.App.4th 1236 (*Carretti*).  In *Carretti*, a California restaurant employee sued a California distributor, Carretti, who had sold to his employer a pasta-making machine that severely injured the employee's arm.  Carretti cross-complained against Italpast, an Italian company that sold the machine to Carretti in Italy.  (*Id*. at pp. 1239-1240.)  Italpast had no offices or employees in the United States, and did not market or advertise its products in the United States.  (*Id*. at p. 1240.)  Italpast never sold goods directly to California users, and Carretti was the only California distributor who purchased its products.  (*Ibid*.)  At the time of the lawsuit, Carretti had been doing business with Italpast for seven years, and he traveled to Italy on a regular basis to purchase pasta machines and other products.  (*Ibid*.)  For each purchase, Italpast delivered the goods to an Italian shipper selected by Carretti, and Carretti arranged for shipment to California.  (*Ibid*.)  Carretti then resold Italpast products in the United States and other countries.  (*Ibid*.)

The Court of Appeal in *Carretti* concluded that Italpast had not purposefully availed itself of the California forum because the evidence failed to show that "Italpast, having placed its products into the stream of commerce in Italy, either intended to serve the California market or was aware its product was being marketed in the forum."  (*Carretti*, *supra*, 101 Cal.App.4th at p. 1239.)  The court noted that Italpast had "not cultivated the California sales market by repeatedly sending merchandise to various California distributors."  (*Id*. at p. 1253.)  Instead, Italpast engaged in

15

"random sales in Italy to a distributor who happens to have an office in California but may resell its products anywhere." (*Ibid*.) As the court explained: "We do not construe this as an effort on Italpast's part to serve the California market. It was serving the purchaser who arrived to do business with it in Italy. True enough, it may have been foreseeable that the machines could wind up in California, inasmuch as [Carretti] happened to have an office in California. But this is not the same as saying Italpast had or should have had an *expectation* that the products would be sold to California *consumers*." (*Id*. at pp. 1246-1247.)

In this case, we conclude that Jayone met its burden of demonstrating that Aekyung purposefully availed itself of the benefits of doing business in California. The undisputed facts show that, between 2005 and 2012, Aekyung engaged in a number of direct sales transactions with multiple California distributors of its consumer products. One of those California distributors was Jayone. According to Kim, Jayone's Senior Director, Jayone had an ongoing business relationship with Aekyung between 2006 and 2010. During that period, Aekyung sold to Jayone thousands of units of its products, including 3,600 bottles of the Aekyung Humidifier Mate. All products sold by Aekyung were shipped to Jayone in California through the Ports of Los Angeles or Long Beach. At the time Aekyung made these sales, Aekyung was aware that Jayone's business was located in California, and that the products were being shipped to Jayone at a California address. Indeed, the invoices that Aekyung prepared for the two shipments of the Humidifier Mate to Jayone in 2006 and 2007 listed Jayone's Paramount, California business address and identified Los Angeles as the final destination for the goods.

The evidence also shows that, between 2006 and 2010, Aekyung and Jayone had regular communications about their business relationship. As described by Kim, representatives from Aekyung and Jayone communicated with each other on a regular basis by telephone, email, and purchase orders. In September 2006, Aekyung representatives, including Milky Kim (who was responsible for overseeing Aekyung's United States market), visited Jayone's facility in California to discuss increasing the volume of Aekyung's exports to Jayone. During that trip, Jayone took the Aekyung representatives to a Los Angeles retail store where Aekyung products were sold so that the representatives could observe the placement of the products inside the store as well as the store's clientele. Thus, as of September 2006, the Aekyung representatives who visited that Los Angeles retail store would have known the company's products were being sold to consumers in California.

In addition, Jayone presented evidence that, between 2005 and 2012, Aekyung directly sold products other than the Humidifier Mate to at least five different distributors located in California. While Aekyung did not know the intended final destination for the goods sold to these distributors, it understood that each of the distributors had a California shipping address. Aekyung's direct sales to California businesses generated $1.78 million in revenue for the company between 2005 and 2012, which accounted for more than half of Aekyung's total revenue for products sold to the United States. Thus, unlike the Italian company in *Carretti*, which sold its products to a single California distributor who traveled to Italy, Aekyung made direct efforts to serve a California market by repeatedly selling and shipping its consumer products to multiple distributors in California.

Citing the United States Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court* (2017) 582 U.S. ___, 137 S.Ct. 1773, 1781 (*Bristol-Myers*), Aekyung argues that its sales of products other than the Humidifier Mate cannot support a finding of purposeful availment because "contacts with the forum state that are 'unrelated to' the accused product are 'not relevant' to the specific jurisdictional inquiry." Aekyung's reliance on this language in *Bristol-Myers* to support its argument is misplaced. In claiming that its two Humidifier Mate shipments to Jayone are the only relevant contacts for determining whether it personally availed itself of the California forum, Aekyung is conflating the first and second prongs of the specific jurisdiction inquiry. The first prong concerns purposeful availment, and whether the nonresident defendant purposefully directed its activities toward California such that it should expect, by virtue of the benefit it receives, to be subject to the jurisdiction of California courts. (*Snowney*, *supra*, 35 Cal.4th at pp. 1062-1063.) The second prong concerns relationship and whether the lawsuit at issue is related to or arises out of the defendant's contacts with California. (*Id*. at pp. 1067-1068.)

*Bristol-Myers* solely addressed the relatedness prong. As the high court explained: "In order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.' [Citations.] In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' [Citation.] For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes

18

jurisdiction.' [Citation.]" (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1780.) "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. [Citation.]" (*Id*. at p. 1781.) Accordingly, under *Bristol-Myers*, Aekyung's sales of products unconnected to the Humidifier Mate are not relevant to determining whether the action is related to Aekyung's contacts with California. However, the nature and quality of Aekyung's California sales activities may be considered in deciding whether the company purposefully availed itself of the privilege of doing business in the State. (See *Snowney*, *supra*, 35 Cal.4th at p. 1063 ["purposeful availment occurs where a nonresident defendant "'purposefully direct[s]" [its] activities at residents of the forum' . . ., "'purposefully derive[s] benefit" from' its activities in the forum . . ., [or] "'deliberately" has engaged in significant activities within' the forum"]; *Greenwell v. Auto-Owners Ins. Co.* (2015) 233 Cal.App.4th 783, 795 [while the specific jurisdiction relatedness prong focuses on the controversy at issue, "the "purposeful availment" prong . . . focuses on the nature and quality of the defendant's activities in the state or with state residents"].)

Aekyung also contends that the evidence cannot support a finding of purposeful availment because it never made a direct effort to serve any market for its products in California, and did not know whether the bottles of the Humidifier Mate that it sold to Jayone would be resold to any California consumers. If the scope of Aekyung's direct sales to California businesses had been limited to the two Humidifier Mate shipments it made to Jayone in April 2006 and January 2007, then this argument might have merit. In the products liability context, merely placing a product into the stream of commerce, even with knowledge that the

19

product might enter the forum state, is not a sufficient basis for personal jurisdiction over a nonresident defendant. (*J. McIntyre Machinery, Ltd. v. Nicastro* (2011) 564 U.S. 873, 885-886 (plurality opinion); see also *Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 602 ["inquiry into a foreign defendant's purposeful availment . . . must find more than merely entering a product into the stream of commerce with knowledge the product might enter the forum state"].) On the other hand, "if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." (*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U. S. 286, 297.)

The evidence in this case demonstrates that Aekyung did not merely place its products into the stream of commerce with an awareness that they might end up in California. Rather, Aekyung purposefully directed its activities toward California businesses when it repeatedly sold its products to various California distributors over a seven-year period. Aekyung also purposefully derived benefits from its activities in California when it generated almost $2 million in revenue from these California sales. In so doing, Aekyung purposefully availed itself of the benefits of doing business in California and reasonably could expect to be subject to the jurisdiction of California courts.

20

## III. Relatedness to Current Controversy

We next consider the second prong of the specific jurisdiction inquiry, and whether the controversy at issue is related to or arises out of Aekyung's contacts with California. The trial court concluded that Jayone failed to satisfy this prong because it did not demonstrate that An purchased or used the bottles of the Humidifier Mate that Aekyung shipped to Jayone in April 2006 and January 2007. We conclude that the trial court applied the relatedness prong too narrowly, and that Jayone met its burden of showing that Plaintiffs' wrongful death action is related to or arises out of Aekyung's sale of the Humidifier Mate.

In *Vons, supra*, 14 Cal.4th 434, the California Supreme Court explained that the second prong of the specific jurisdiction inquiry is satisfied if "there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim." (*Id.* at p. 456.) "A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction. Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate." (*Id.* at p. 452.) Moreover, "the defendant's forum activities need not be directed at the *plaintiff* in order to give rise to specific jurisdiction." (*Id.* at p. 457.) "[T]he nexus required to establish specific jurisdiction is between the defendant, the *forum*, and the litigation [citations] – not between the plaintiff and the defendant." (*Id.* at p. 458.) "'"Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact].'" [Citation.]" (*Id.* at p. 455; accord, *Snowney, supra*, 35 Cal.4th at p. 1068.)

Here, the undisputed evidence demonstrates that the claims alleged in the Plaintiffs' wrongful death action have a substantial nexus to Aekyung's sale of its Humidifier Mate to Jayone in California.  In their complaint, Plaintiffs allege that An purchased the Aekyung Humidifier Mate from Kim's Home Center in Los Angeles "[c]ontinuously between 2006 and 2012," and that she used the product on a "daily or semi-daily basis in the winter months and less frequently during the summer months."  Plaintiffs also allege that the Aekyung Humidifier Mate "contained toxic chemicals," and that An's "long term and frequent use of the product" caused her to develop idiopathic pulmonary fibrosis and respiratory depression, which resulted in her death.  In opposing Aekyung's motion to quash, Jayone presented evidence that it directly purchased from Aekyung 200 boxes of the Humidifier Mate in April 2006, and another 100 boxes of the Humidifier Mate in January 2007.  All products were shipped to Jayone at the Port of Los Angeles.  Jayone also presented evidence that it sold 55 boxes of the Humidifier Mate to Kim's Home Center in Los Angeles between 2006 and 2007.  Those sales occurred in December 2006, October 2007, and November 2007.  The Humidifier Mate products that Jayone sold to Kim's Home Center included product that Jayone purchased from Aekyung in April 2006 and January 2007.  Accordingly, the record shows that, between 2006 and 2007, (1) An allegedly purchased the Aekyung Humidifier Mate directly from Kim's Home Center; (2) Kim's Home Center purchased 660 bottles of the Humidifier Mate directly from Jayone; and (3) Jayone purchased 3,600 bottles of the Humidifier Mate directly from Aekyung.  These California sales involving the Aekyung

Humidifier Mate substantially connect Plaintiffs' claims to Aekyung's contacts with the State.

In finding that Jayone had failed to satisfy the relatedness prong, the trial court focused on whether there was a direct link between Aekyung and An, which would prove that the specific bottles of the Aekyung Humidifier Mate that An purchased from Kim's Home Center were the same ones that Aekyung sold to Jayone. The trial court thus applied a causation requirement to the relatedness prong of the specific jurisdiction inquiry. The California Supreme Court has made clear, however, that neither a "proximate cause" test nor a "but for" test is the proper standard for evaluating whether a cause of action is sufficiently related to a defendant's forum contacts to warrant the exercise of jurisdiction. (*Snowney*, *supra*, 35 Cal.4th at p. 1068; *Vons*, *supra*, 14 Cal.4th at pp. 462-464, 467-469.) As the *Vons* court explained: "To require that the injury be proximately caused by the forum contact is to require that the injury 'arise out of' the forum contact in the strictest sense. Such a requirement is inconsistent with the formulation that appears in [United States Supreme Court precedent], which . . . states in the disjunctive that jurisdiction is proper when litigation results from alleged injuries that "'arise out of or relate to'" forum activities. [Citations.]" (*Vons*, *supra*, at p. 462.) The *Vons* court likewise rejected a "but for" causation standard, reasoning that the "'but for' test is overly mechanical and fails to concentrate on the central issue presented by a motion to quash for lack of specific jurisdiction – that is, whether the defendant's forum contacts and the plaintiff's claim are related sufficiently so that it is fair to subject the defendant to jurisdiction in the forum." (*Id*. at pp. 468-469.)

23

Therefore, for purposes of the relatedness prong, Jayone was not required to prove that the bottles of the Humidifier Mate that it purchased directly from Aekyung in 2006 and 2007 in fact ended up in the hands of An. To impose such a strict causation requirement in the specific jurisdiction context would be contrary to *Vons* and its progeny. Rather, to satisfy the jurisdictional requirement that Plaintiffs' claims arise out of or relate to Aekyung's forum contacts, it was sufficient for Jayone to show that, within the time period covering An's alleged injuries, Jayone sold bottles of the Humidifier Mate that Aekyung had shipped to Jayone in California to Kim's Home Center in Los Angeles. The undisputed facts establish that Jayone met its burden here. (See *Cassiar Mining Corp. v. Superior Court* (1998) 66 Cal.App.4th 550, 553 [to prove relatedness prong of specific jurisdiction, plaintiffs in California asbestos litigation did not have to show nonresident defendant sold asbestos fiber to specific jobsites where plaintiffs worked; it was sufficient that "litigation result[ed] from injuries 'related to' [defendant's] forum activities of selling asbestos to certain companies located in California"].)

In arguing that the relatedness prong is not satisfied in this case, Aekyung relies on the statement in *Bristol-Myers* that "[t]he bare fact that [the nonresident defendant] contracted with a California distributor is not enough to establish personal jurisdiction in the State." (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1783.) Aekyung contends that the fact that it twice sold the Humidifier Mate to Jayone is insufficient to establish specific jurisdiction in the absence of evidence showing how or by whom the particular bottles purchased by An were distributed to the retail store that sold them to her. This contention lacks merit.

24

In *Bristol-Meyers*, more than 600 plaintiffs, most of whom were not California residents, filed an action in California against Bristol-Myers Squibb Company (BMS), asserting products liability claims based on injuries allegedly caused by BMS's Plavix drug. (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1777.) BMS was not a California corporation, and it did not design, develop, or manufacture Plavix in California. (*Id*. at pp. 1777-1778.) It did, however, contract with a California company, McKesson, to distribute Plavix nationally. (*Id*. at p. 1783.) BMS also engaged in other business activities in the State. Five of its research and laboratory facilities were located in California. (*Id*. at p. 1778.) In addition, BMS employed about 250 sales representatives in California and maintained a small state-government advocacy office in Sacramento. (*Ibid*.)

Asserting a lack of personal jurisdiction, BMS moved to quash service of summons as to the claims alleged by the nonresidents. (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1778.) The California Supreme Court held that BMS's extensive contacts with California permitted the exercise of specific jurisdiction over the nonresidents' claims. (*Id*. at p. 1779.) The United States Supreme Court reversed, holding that California lacked specific jurisdiction to entertain the nonresidents' claims because there was no adequate link between those claims and the California forum. (*Bristol-Myers*, *supra*, 137 S.Ct. at pp. 1781-1782.) The high court rejected California's "sliding-scale approach" to specific jurisdiction under which "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." (*Id*. at p. 1781.) The court explained that, "[f]or specific jurisdiction, a defendant's general connections with the

25

forum are not enough." (*Ibid*.) Instead, "[w]hat is needed . . . is a connection between the forum and the specific claims at issue." (*Ibid*.) Turning to the facts of the case, the court noted that "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." (*Ibid*.) The nonresidents' claims thus "involve[d] no harm in California and no harm to California residents." (*Id*. at p. 1782.)

In response to the nonresidents' argument that BMS's decision to contract with California-based McKesson to distribute Plavix nationally provided a sufficient basis for jurisdiction, the *Bristol-Myers* court stated: "In this case, it is not alleged that BMS engaged in relevant acts together with McKesson in California. Nor is it alleged that BMS is derivatively liable for McKesson's conduct in California. And the nonresidents 'have adduced no evidence to show how or by whom the Plavix they took was distributed to the pharmacies that dispensed it to them.' [Citations.] The bare fact that BMS contracted with a California distributor is not enough to establish personal jurisdiction in the State." (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1783.)

The facts in this case are significantly different from those in *Bristol-Myers*. Here, Plaintiffs are California residents alleging claims on behalf of their deceased mother, An, who was also a California resident. Plaintiffs allege that An purchased the Aekyung Humidifier Mate in California, used the product in California, and was harmed by the product in California. It is undisputed that the 300 boxes of Humidifier Mate that Aekyung sold directly to Jayone in 2006 and 2007 were shipped to the Port of Los Angeles in California, and that Aekyung's own invoices identified Los Angeles as the final destination for the goods. It

26

is also undisputed that Jayone sold a portion of the Humidifier Mate product that it purchased from Aekyung to Kim's Home Center in Los Angeles, which was the retail store where An allegedly bought the product on a continuous basis from 2006 to 2012.

Accordingly, this is not a case where it is merely shown that a nonresident defendant contracted with a California distributor to sell its product, and the evidence otherwise fails to establish how or by whom the product was distributed to the business that ultimately sold it to the plaintiff. Rather, this is a case where the plaintiffs have presented evidence showing that a nonresident defendant contracted with a California distributor to ship its product to California, and the California distributor in turn sold the product to a California store, where the plaintiffs' mother, a California resident, repeatedly purchased the product. Hence, unlike the nonresidents' claims in *Bristol-Myers*, the claims alleged in this case specifically involve harm in California suffered by a California resident. On this record, Jayone has established that Plaintiffs' claims in this action are sufficiently related to Aekyung's contacts with California to warrant the exercise of specific jurisdiction.

## IV. Reasonableness

Having concluded that Jayone has satisfied its burden of demonstrating facts justifying the exercise of specific jurisdiction, we next consider whether Aekyung has shown that the assertion of jurisdiction would be unfair or unreasonable. We conclude that Aekyung has not made the requisite showing here.

In evaluating whether the exercise of specific jurisdiction would comport with fair play and substantial justice, the "'court "must consider the burden on the defendant, the interests of the

27

forum State, and the plaintiff's interest in obtaining relief.  It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'"'  [Citation.] 'Where . . . a defendant who purposefully has directed [its] activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' [Citation.]"  (*Snowney*, *supra*, 35 Cal.4th at p. 1070.)  In the case of a foreign company, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." (*Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 114.)  However, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."  (*Ibid*.)

Aekyung contends that requiring a "Korean company with zero presence in California . . . to appear in a forum on the other side of the Pacific Ocean from its home would naturally "impose 'serious burdens.'"  Aekyung also claims that asserting jurisdiction over it would be particularly unfair given that its only relevant forum contacts were two isolated shipments of the Humidifier Mate to Jayone over 10 years ago.  We disagree. Aekyung is a corporation with a global sales market.  While the burdens placed on a foreign company must be carefully weighed, "'modern advances in communications and transportation have significantly reduced the burden of litigating in another

country.'" (*Gilmore Bank v. AsiaTrust New Zealand Ltd.* (2014) 223 Cal.App.4th 1558, 1575.) Additionally, contrary to Aekyung's characterization, the scope of its relevant contacts with California is not limited to the two Humidifier Mate shipments that it made to Jayone. As discussed, Aekyung engaged in numerous direct sales of its consumer products to multiple California distributors over a seven-year period, and generated almost $2 million in sales revenue from these California business activities. Given the strength of Aekyung's contacts with California, the assertion of specific jurisdiction in this case would not be unreasonable.

California also has "a substantial interest in providing a forum in which a California resident may seek redress for injuries sustained" in the State. (*Secrest*, *supra*, 33 Cal.3d at p. 672; see *Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 591 ["California has a manifest interest in providing a local forum for its residents to redress injuries inflicted by out-of-state defendants"].) As previously noted, Plaintiffs are California residents, and their mother, An, was a California resident. It is alleged that An purchased and used the Aekyung Humidifier Mate in California, was injured by the product in California, and sought medical care for her injuries in California. Jayone is a California corporation, and the two other defendants named in Jayone's cross-complaint—Kim's Home Center and Woosung—are also California corporations.

Aekyung nevertheless asserts that California's interest in the action is minimal because Jayone's cross-complaint is solely for indemnity, and "Plaintiffs are not even pressing claims against Aekyung." While it is true that Plaintiffs have not served their complaint on Aekyung to date, they did name Aekyung as a defendant in the complaint, and they allege that Aekyung

distributed the specific product that caused An's death with the knowledge that the product was defective. Irrespective of whether any other Korean defendant named in Plaintiffs' complaint may be subject to California's personal jurisdiction, the State still has a strong interest in adjudicating the present controversy. Under these circumstances, Aekyung has failed to make a compelling case that the assertion of jurisdiction would be unreasonable or unfair. We therefore conclude that Aekyung is subject to specific jurisdiction in California.

## DISPOSITION

The order granting Aekyung's motion to quash service of summons is reversed and the court is directed to enter a new order denying the motion. Jayone shall recover its costs on appeal.

ZELON, J.

We concur:

PERLUSS, P. J.

SEGAL, J.

30