Filed 4/27/22  Beierschmitt v. Grobet File Co. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KARL BEIERSCHMITT et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> GROBET FILE COMPANY OF AMERICA, LLC, <br><br> Defendant and Respondent. | B310754 <br><br> (Los Angeles County Super. Ct. No. 20STCV07688) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David S. Cunningham III, Judge.  Reversed and remanded.

Weitz & Luxenberg, Benno Ashrafi, and Josiah Parker; Bartlett Barrow and Brian P. Barrow; The Arkin Law Firm and Sharon Arkin for Plaintiffs and Appellants.

Walsworth WFBM, Gabriel A. Jackson, Peter K. Renstrom, and Todd M. Thacker for Defendant and Respondent.

Karl Beierschmitt (Karl), a California resident, was allegedly exposed to asbestos products while working in dental offices, including in California, from 1955 to 1975. Many years later, he was diagnosed with malignant mesothelioma. Karl and his wife, Margaret Beierschmitt (collectively, plaintiffs),[1] sued Grobet File Company of America, LLC (Grobet), successor in interest to William Dixon Company (Dixon),[2] as a manufacturer of asbestos products in California. In this appeal from the trial court's order granting Grobet's motion to quash service of summons for lack of personal jurisdiction, we consider whether plaintiffs sufficiently demonstrated their claims arise out of or relate to Grobet's forum-directed activities, which is necessary to establish specific (case-linked) jurisdiction.

## I. BACKGROUND

In February 2020, plaintiffs filed a complaint alleging Karl, a California resident, was exposed to asbestos soldering blocks sold by Grobet and others while working as a dental specialist and dental supply salesperson "from 1955 through the 1970s" in California and other "various locations." As pertinent to Grobet, plaintiffs asserted causes of action for negligence, breach of express and implied warranties, strict liability in tort, and loss of consortium.

---

[1] Karl died during the pendency of this appeal, and his successor in interest was substituted as an appellant. For simplicity's sake, we refer to plaintiffs, including Karl's successor in interest, collectively as "plaintiffs."

[2] Except where otherwise indicated, we refer to Grobet and Dixon interchangeably.

2

Grobet moved to quash service of summons for lack of personal jurisdiction.[3]  Grobet argued it was not subject to general jurisdiction in California because it is not incorporated in this state and does not maintain its principal place of business here.  As to specific jurisdiction, Grobet contested only one of the elements necessary to show specific jurisdiction exists: the company argued plaintiffs could not establish their lawsuit arises out of or relates to Grobet's activity in California.  Specifically, Grobet argued plaintiffs failed to show Grobet marketed "the *particular* product that injured Karl[,] . . . not just that *type* of product[,] to the California market."

In opposition, Karl submitted a declaration stating he encountered Dixon-branded asbestos soldering blocks while working as a dental specialist in the United States Air Force between 1955 and 1959 and while working as a traveling dental supply salesperson—including in California—between 1960 and 1975.[4]  Plaintiffs also submitted Grobet's responses to interrogatories in another case that stated, among other things, that Grobet produced catalogs in 1968 and 1973 featuring asbestos soldering block products but disclaimed specific knowledge "regarding the identity of the customers to whom the products featured in the catalogs were sold, shipped, or otherwise distributed . . . ."  One of the interrogatory responses did acknowledge, however, that "[a] reasonable list of potential customers might consist of the major jewelry and dental

---

[3]  Grobet's motion was styled as a "Motion to Quash Complaint for Lack of Personal Jurisdiction."

[4]  Karl does not allege he sold Grobet products.

3

equipment distributors located in major American cities during the relevant time period."

The trial court continued the hearing on Grobet's motion to quash the summons to permit jurisdictional discovery "as to manufacture, sale, supplies, and marketing in California." Plaintiffs deposed John Canzoneri (Canzoneri), an employee of Grobet since 1967 and its president since 1991.

Canzoneri testified Grobet acquired Dixon in or around 1968 and continued selling Dixon's products under the Dixon brand in the jewelry, dental, and optical industries through the 1970s. Canzoneri testified Dixon had "a national catalog" during this period that "covered the United States and the jewelry industry" and included asbestos soldering blocks. Grobet did not distribute a dental products catalog until 1973, but prior to that, dental products were "sold from a price list with a description of the product."

Canzoneri testified Grobet employed a "jewelry salesperson" in California between 1963 and 1978. Canzoneri did not "know what all he [i.e., the salesperson] sold" because he did not have the salesperson's sales records, but the salesperson was "tasked with selling [Grobet's] products to the jewelry industry, to jewelry stores, manufacturers of jewelers [sic], [and] jewelry supply houses."

Canzoneri testified he did not have "any information" as to whether the salesperson was would have been prohibited from selling in California any of the products Grobet made (which would include dental asbestos soldering blocks). Canzoneri did testify, however, that Grobet's California jewelry salesperson was "restricted from cross-selling to other industries because each industry had its own distribution network and its own supply

4

houses." Customers in the jewelry industry were the only ones "able to buy direct" from Grobet and customers in other industries would instead purchase products through distributors.[5] Canzoneri nonetheless conceded that "if a customer in California was using a William Dixon soldering block, the ultimate source of that product . . . between 1963 and 1978. . . . would have been either William Dixon, or once it was acquired, Grobet . . . ."

The trial court granted Grobet's motion to quash. At the hearing, the trial court found that plaintiffs failed to make the requisite showing "that [Karl] was injured by a product that Grobet . . . 'actually directed to California[.]'" The trial court emphasized there was no evidence Grobet "directed its products [to California] . . . for dental office use, much less the particular soldering block that [Karl] used." Grobet did not sell products directly to dental offices, the court concluded, and the only known contact with California was a salesperson who only engaged with customers in the jewelry industry. The trial court recognized its view of the showing plaintiffs were required to make regarding the relationship between their claims and Grobet's forum-directed activity rested on a "narrow reading" of the Supreme Court's opinion in *Bristol-Myers Squibb Co. v. Superior Court* (2017) ___ U.S. ___ [137 S.Ct. 1773] (*Bristol-Myers*) and acknowledged "this may certainly be an area where we need to get some clarity."

---

[5] The appellate record does not identify any dental distributors to which Grobet sold asbestos products, or their customers.

## II. DISCUSSION

A few months after the trial court determined it had no specific personal jurisdiction because plaintiffs were unable to trace asbestos soldering blocks Karl encountered to any sale of such blocks by Grobet in California, the United States Supreme Court clarified that no "strict causal relationship" is necessary to establish specific jurisdiction. (*Ford Motor Co. v. Montana Eighth Judicial Dist. Court* (2021) ___ U.S. ___, ___ [141 S.Ct. 1017, 1026] (*Ford*).) At the same time, the high court cautioned that its holding "does not mean anything goes" (*id.* at ___ [141 S.Ct. at 1026]), and Grobet continues to urge affirmance chiefly by emphasizing the paucity of evidence that Grobet sold asbestos-containing soldering blocks to California *dental* customers (as opposed to jewelry industry customers) during the relevant time period.

We hold, on the understanding of "arising from or related to" as clarified in *Ford*, the trial court should have exercised personal jurisdiction in this case. There is no question that Grobet purposely availed itself of the California market for soldering blocks; the only question is whether plaintiffs needed better evidence to show their claims against Grobet are related to (not directly caused by) Grobet's sale of asbestos-containing products in this state. While there is "room for reasonable disagreement about what it means for one thing to arise out of or relate to another" (*Halyard Health, Inc. v. Kimberly-Clark Corp.* (2019) 43 Cal.App.5th 1062, 1069), we believe the evidence plaintiffs adduced adequately shows the requisite "'relationship among the defendant, the forum, and the litigation'" that is "the 'essential foundation' of specific jurisdiction." (*Ford, supra,* ___ U.S. at ___ [141 S.Ct. at 1028]). Grobet employed a salesperson

to target the California market and the evidence was not clear as to whether that salesperson was prohibited from selling to dental customers. But Grobet conceded both that a "reasonable list of potential customers" for its dental products catalog in 1973 "might consist of the major jewelry and dental equipment distributors located in major American cities" and that the ultimate source for any Grobet soldering block used by a customer in California would have been Grobet. On these facts, even if it were true that asbestos soldering blocks used in California dental offices were sold only through intermediary distributors, Grobet's admitted promotion and sale of at least some asbestos-containing soldering blocks in this state during the relevant time period is enough to establish the requisite connection and to make this state is a constitutionally acceptable forum for a suit brought by a resident thereof seeking damages for alleged harm that occurred here. We shall accordingly reverse.

A. *Principles of Personal Jurisdiction, and Our Review of Motions to Quash for an Asserted Lack of Such Jurisdiction*

California's long-arm statute (Code Civ. Proc., § 410.10) authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California. "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. [Citation.] Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the

maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' [Citation.]" (*Walden v. Fiore* (2014) 571 U.S. 277, 283, quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 (*International Shoe*).)

This constitutional basis for personal jurisdiction may be established on either a general (all-purpose) or specific (case-linked) basis. (*Ford, supra*, ___ U.S. at ___ [141 S.Ct. at 1024].) The parties agree only specific personal jurisdiction is at issue here.

Distilled to three commonly recited elements, "[a] court may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum"' [citations]; and (3) '"the assertion of personal jurisdiction would comport with 'fair play and substantial justice""' [citations]." (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269; accord, *Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 553 (*Jayone*).) Acts by the defendant relied on to give rise to specific jurisdiction "must be the defendant's own choice and not 'random, isolated, or fortuitous,'" and they "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." (*Ford, supra*, ___ U.S. at ___ [137 S.Ct. at 1025].) The defendant's contacts need not bear "a strict causal relationship" to the litigation (*Id.* at ___ [141 S.Ct. at 1026]), but "there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the

8

forum State.' [Citation.]" (*Bristol-Myers*, *supra*, ___ U.S. at ___ [137 S.Ct. at 1781].)

"""When a defendant moves to quash service of process" [on jurisdictional grounds], "the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction."'" (*Jayone*, *supra*, 31 Cal.App.5th at 553.) The plaintiff must prove jurisdictional facts by a preponderance of the evidence. (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 110.)

"'When no conflict in the evidence exists, . . . the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record. [Citation.]' [Citation.]" (*Jayone*, *supra*, 31 Cal.App.5th at 553.)

>    B.      *Plaintiffs' Causes of Action Against Grobet Are*
>            *Related to the Company's California-Directed*
>            *Conduct*

Grobet, and later the trial court, relied heavily on the Supreme Court's discussion of the "arising out of or related to" element of specific jurisdiction discussed in *Bristol-Myers*. In that case, the high court held the defendant pharmaceutical company's extensive activities in California did not support specific jurisdiction as to claims asserted by non-resident plaintiffs who did not obtain an allegedly defective drug from a California source, suffer injury in California, or receive treatment in California. (*Bristol-Myers*, *supra*, ___ U.S. at ___ [137 S.Ct. at 1777-1778].) In so holding, the Supreme Court rejected California's "sliding scale" approach to specific jurisdiction, one in which "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant

9

has extensive forum contacts that are unrelated to those claims." (*Id.* at ___ [137 S.Ct. at 1781].)

Without the benefit of *Ford*, Grobet and the trial court construed high court precedent—and *Bristol-Myers* specifically— to require a showing that Karl's asbestos exposure was the direct result of Grobet's California-directed activities. *Ford*, however, clarifies this is a misreading of *Bristol-Myers*.

At issue in *Ford* were two lawsuits arising from automobile accidents. (*Ford*, *supra*, ___ U.S. at ___ [141 S.Ct. at 1023].) One, filed in Montana, involved a Ford Explorer; the other, filed in Minnesota, involved a Crown Victoria. (*Id.* at ___ [141 S.Ct. at 1023].) Ford contended it was not subject to specific jurisdiction in either state because the individual vehicles at issue were not designed, manufactured, or originally sold in these states: "Only later resales and relocations by consumers had brought the vehicles to Montana and Minnesota." (*Id.* at ___ [141 S.Ct. at 1023].) The Supreme Court rejected Ford's position that "only a strict causal relationship" would be sufficient to establish the requisite connection between the lawsuits and Ford's forum-directed activities. (*Id.* at ___ [141 S.Ct. at 1026].)

The high court explained that, unlike the non-resident plaintiffs in *Bristol-Myers*, who were "engaged in forum-shopping," the *Ford* plaintiffs—residents of the forum states who were injured in the forum states—"brought suit in the most natural State[s]" despite having purchased the allegedly defective vehicles in other states. (*Ford*, *supra*, ___ U.S. at ___ [141 S.Ct. at 1031].) The Court emphasized that "Ford urges Montanans and Minnesotans to buy its vehicles, including (at all relevant times) Explorers and Crown Victorias," by "billboards, TV and radio spots, print ads, and direct mail." (*Id.* at ___ [141 S.Ct. at

1028].)  Moreover, dozens of Ford dealerships in both states offered these models for sale and provided maintenance services, "making it easier to own a Ford" and "encourag[ing] Montanans and Minnesotans to become lifelong Ford drivers."  (*Id.* at ___ [141 S.Ct. at 1028].)  Because "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege[d] malfunctioned and injured them in those States," there was "a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction."  (*Id.* at ___ [141 S.Ct. at 1028], quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall* (1984) 466 U.S. 408, 414.)

*Ford* not only undermines the narrow personal jurisdiction position Grobet took in the trial court, but affirmatively illustrates why plaintiffs' evidence adequately establishes the trial court should exercise specific personal jurisdiction over Grobet.  Like the plaintiffs in *Ford*, Karl was a forum resident who was allegedly exposed to and harmed by Grobet's products in California.  Plaintiffs were (perhaps unsurprisingly) unable to definitively link these products to invoices prepared by Grobet's California salesperson more than 50 years ago, but they demonstrated Grobet systematically served a market for its products in California; inclusion of asbestos soldering blocks in Grobet's "national catalog" demonstrates they were available for purchase in California and Grobet's interrogatory responses sensibly concede customers for its wares were likely to be found in most major American cities—of which California has at least

11

two or three.[6]  "[T]his is [accordingly] not a case where the plaintiff claims harm in the forum from an allegedly defective product and seeks to establish personal jurisdiction over the defendant by showing the defendant's extensive in-forum sales of a different product."  (*Bader v. Avon Products, Inc.* (2020) 55 Cal.App.5th 186, 196.)  Karl claims he was injured by a Grobet asbestos soldering block, and it is undisputed Grobet marketed such blocks for sale to customers in California.

Grobet maintains this is not enough because its California salesperson sold only to the jewelry industry, not the dental industry.  We think the evidence is more muddled than that in light of Grobet's interrogatory responses that we have just discussed.  Even Canzoneri's testimony, upon which Grobet principally relies, is not definitively to the contrary.  He testified Grobet had a "jewelry salesperson" in California between 1963

---

[6]     Grobet's suggestion that its dental soldering blocks and jewelry soldering blocks were different "line[s] of products" is belied by the generic descriptions of the soldering block products in its catalogs.  Although Canzoneri described at least one of the catalogs as "cover[ing] the jewelry industry" (in which case one would not necessarily expect an industry designation in the product description), Grobet's discovery responses indicate the catalogs were not industry-specific.  Additionally, Canzoneri testified that Grobet produced dental catalogs beginning in 1973, and catalogs produced after this date refer to asbestos soldering blocks in the same generic terms.  Most significantly, Canzoneri's claim at one point in his deposition that its jewelry salesperson was not permitted to "cross-sell[ ]" to the dental industry was not predicated on an assertion that the company's jewelry and dental products were somehow different, but rather that each industry had its own distribution network.

and 1978 who was "tasked with selling [Grobet's] products to the jewelry industry, to jewelry stores, manufacturers of jewelers [sic], [and] jewelry supply houses." When pressed on whether the salesperson was prohibited from selling to customers outside the jewelry industry, however, Canzoneri at one point testified the salesperson was prohibited from "cross-selling" to other industries yet at other points conceded he did not "know what all [the salesperson] sold" and had no information on whether the salesperson "was prohibited from selling any of Grobet's products into the state of California."

Giving Grobet the benefit of the ambiguity for the sake of argument, there is still adequate evidence Grobet marketed asbestos soldering blocks for sale in California—and did so in a manner related to this litigation. Karl alleges he was injured by Grobet asbestos soldering blocks used in California, and assuming the evidence shows Grobet focused its marketing and sale of such blocks to jewelry customers, the marketing and promotion of the specific blocks alleged to be the cause of injury in this state is still sufficient evidence of relatedness to justify specific jurisdiction. Entities may structure their business to avoid exposure to litigation in a particular forum, but this is generally understood to mean avoiding the forum entirely. (See, e.g., *Ford, supra*, ___ U.S. at ___ [141 S.Ct. at 1027] [a company may "'act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are [still] too great, *severing its connection with the State*'"], emphasis added, quoting *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297.) The idea that a company can instead slice the market for a product in a state into ever thinner segments and thereby avoid suit by those who are known

13

or easily foreseeable product users but who fall outside a particular segment targeted by the company for direct marketing efforts overstrains the principle of reciprocity between a state and a defendant that is at the heart of personal jurisdiction jurisprudence; a company taking this approach does not "enjoy[ ] the benefits and protection of the laws of that state" to a proportionately lesser degree (*International Shoe, supra*, 326 U.S. at 319; accord, *Ford, supra*, at ___ [141 S.Ct. at 1025 ["*International Shoe* founded specific jurisdiction on an idea of reciprocity between a defendant and a State"].)  Grobet enjoyed the benefits and protections of California and the company is accordingly subject to suit for harm here allegedly caused by its asbestos-containing soldering blocks to a California resident.

DISPOSITION

The trial court's order is reversed and the matter is remanded for further proceedings consistent with this opinion. Plaintiffs shall recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

MOOR, J.