Filed 5/20/21  Rodillas v. Shurwest CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| GLORIA SALVADOR RODILLAS, | B304834 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV21497) |
| v. | |
| SHURWEST, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Reversed and remanded with directions.

Reif Law Group, Brandon S. Reif, Ohia A. Amadi, and Lisa M. Foutch for Plaintiff and Appellant.

DLA Piper, Jeanette Barzelay, Evi Schueller, and Hector E. Corea for Defendants and Respondents.

_____

Plaintiff Gloria Salvador Rodillas appeals from an order granting defendants and respondents Shurwest, LLC and Shurwest Holding Company, Inc.'s (collectively, Shurwest) motion to quash service of process for lack of personal jurisdiction. Plaintiff claimed Shurwest, based in Arizona, was involved in selling her an improper retirement investment product that led to significant financial losses. The product consisted of two parts: a life insurance policy and a separate investment with Future Income Payments, LLC (FIP) to fund the premiums on the policy. The trial court concluded that none of the parties involved in the transaction was Shurwest's agents, and thus jurisdiction was not proper. The trial court implicitly denied plaintiff's request to conduct jurisdictional discovery.

On appeal, plaintiff argues the trial court abused its discretion by denying her the opportunity to conduct discovery prior to ruling on the motion to quash. We agree. Agency is not the sole basis by which a court may assert jurisdiction over an out-of-state defendant; a defendant may also be subject to jurisdiction by virtue of selling a defective product to California consumers. Although Shurwest submitted evidence below that it was uninvolved with plaintiff's FIP investment, it admits on appeal that it was involved in the sale of the life insurance policy, which suggests discovery may reveal sufficient California contacts to assert jurisdiction.

Further, it is not clear that the FIP investment is not also relevant to jurisdiction. Shurwest's evidence showed that three of its employees, purportedly acting without Shurwest's knowledge, used Shurwest resources to market the FIP investment at issue. Although Shurwest claims its ignorance frees it from any ties to the FIP investment, we conclude plaintiff

2

is entitled to conduct jurisdictional discovery on this issue as well.

Accordingly, we reverse.

## FACTUAL BACKGROUND

Except where noted, we take the following facts from plaintiff's complaint.

Plaintiff immigrated to the United States from the Philippines in 1983 at age 32. She is not fluent in English and struggles to speak and understand it.

Plaintiff began a professional relationship with Gerald Andrew Ladalardo, Jr., in 2017. Ladalardo worked for CMAM, Inc. dba Heritage Financial Services (Heritage), a financial services firm licensed in California to sell life insurance and annuities.

At the time plaintiff met Ladalardo, she already was invested in a fixed index annuity contract with Fidelity & Life Guarantee, which provided a death benefit and a guaranteed income stream. Ladalardo recommended that plaintiff surrender her annuity and invest instead in a "Structured Cash Flow" program, also called an "IRA Reboot" program. The program involved the purchase of an indexed universal life insurance (IUL) policy, with the premiums funded by other investments intended to yield high income.

Plaintiff followed Ladalardo's recommendation, surrendering her annuity and transferring proceeds of over $100,000 to an individual retirement account (IRA) administered by GoldStar Trust Company. Plaintiff, through Ladalardo, then purchased from Minnesota Life Insurance Company (Minnesota Life) an "Eclipse Indexed Universal Life Insurance Policy." The policy had annual premiums of $20,000, with a face value of

3

$210,000 and a "level death benefit feature of $210,000." Plaintiff used funds from her IRA to pay $12,000 of the initial $20,000 premium.

To fund the rest of the premiums on the IUL policy, plaintiff, on Ladalardo's recommendation and with his assistance, invested nearly all the remainder of her IRA in what she believed was the "S&P 500." In fact, the funds were invested in a financial product sold by FIP.

FIP collapsed in 2018, taking with it plaintiff's invested funds. Though not alleged in the complaint, a grand jury later indicted FIP for allegedly orchestrating and effectuating a Ponzi scheme. Plaintiff's IUL policy was at risk for cancellation because she was could not afford the premium payments.

## PROCEDURAL BACKGROUND

### 1. *Complaint*

Plaintiff filed a complaint for professional negligence, breach of fiduciary duty, elder financial abuse, intentional deceit/fraud, and declaratory relief against Ladalardo, Heritage, two Heritage officers, Minnesota Life, and Shurwest (collectively, defendants).[1]

By its own description, Shurwest, LLC is an Arizona-based "independent marketing organization . . . that markets annuities and insurance products to financial planners and licensed insurance agents. [It] acts as a third-party intermediary between

---

[1] The complaint also named an attorney, James A. Anton, as a defendant. The allegations against Anton are not at issue in this appeal, and our references to "defendants" do not include him.

4

financial planners and insurance companies by providing product education, marketing, and distribution services." Shurwest Holding Company, Inc. also is headquartered in Arizona.

Plaintiff alleged that "Shurwest, for itself and [Minnesota Life], processed Ladalardo's insurance applications for Plaintiff . . . ." Plaintiff further alleged that Shurwest "marketed, promoted, trained and facilitated insurance agencies, including Heritage, and appointed insurance agents, including Ladalardo, to sell the 'Structured Cash Flow' aka 'IRA Reboot' program . . . ." Plaintiff claimed that "Shurwest promoted, endorsed and sponsored the Structured Cash Flow program utilizing [Minnesota Life] and FIP in tandem."

Plaintiff alleged that defendants, including Shurwest, failed to inform her "that a life insurance policy was not advisable for her needs" given that "her investment funds were already qualified in a tax-deferred vehicle . . . and she was elderly and living on a fixed budget without expendable funds to pay the premiums." Defendants knew or should have known plaintiff "was a poor candidate for life insurance" and "did not need and could not afford [the IUL] policy."

Defendants, including Shurwest, also knew or should have known that plaintiff's assets would be invested in the FIP product, which defendants failed to inform plaintiff had not been approved by regulators. Defendants did not inform plaintiff that investing in the IUL policy and FIP "were high-risk transactions" and "that using her tax-deferred IRA to fund the life insurance policy and FIP [investment] incurred tax obligations and penalties." Instead, "Shurwest, Heritage, and [Minnesota Life] supported and encouraged Ladalardo to induce Plaintiff and to

5

exert undue influence and duress over her to sell commission-generating products."

Plaintiff alleged that defendants "substantially depleted Plaintiff's entire liquid net worth, retirement savings and financial well-being by placing her into the [Minnesota Life] IUL policy and FIP."

Plaintiff alleged jurisdiction was proper over Shurwest because it was licensed to conduct insurance business in California, and because "it participated in the professional services offered and provided to Plaintiff with knowledge that its acts and services were provided to an elderly California consumer."

### 2. *Motion to quash*

Shurwest moved to quash service of summons for lack of personal jurisdiction. Shurwest argued the trial court did not have general jurisdiction because California was not Shurwest's state of incorporation or its principal place of business.

Shurwest further argued the trial court did not have specific jurisdiction, because plaintiff had not alleged any actions taken in California by Shurwest, as opposed to Ladalardo or Heritage. "Indeed, [Shurwest is] not alleged to have engaged in any direct product sales to Plaintiff or to have interacted with any investors in California." Nor had plaintiff adequately pleaded that Shurwest had directed or controlled Heritage or Ladalardo such that Heritage and Ladalardo were Shurwest's agents.

Shurwest also disclaimed any involvement in the FIP investment, which Shurwest characterized as the "gravamen of Plaintiff's Complaint." Shurwest provided a declaration from a former employee, Melanie Schulze-Miller, who served as

6

Shurwest, LLC's national sales director for life insurance. Schulze-Miller stated that she had proposed to Shurwest's management that they establish a relationship with FIP, but Shurwest's management rejected the proposal. Schulze-Miller, without Shurwest's knowledge, then formed her own limited liability company, MJSM Financial LLC (MJSM), through which she could refer FIP to financial and insurance advisors without involving Shurwest. All commissions paid by FIP went to MJSM, not Shurwest.

Schulze-Miller stated that she "on occasion directed Shurwest employees who worked under me to perform clerical tasks for the benefit of MJSM," and "did not tell these employees that Shurwest management had not authorized MJSM doing business with FIP or that the tasks were being done for MJSM." Schulze-Miller also apparently at times used her Shurwest e-mail account to conduct FIP business, because she declared, "Any use of my Shurwest email account for FIP-related issues was inadvertent," and she "meant to use my MJSM emails for all FIP-related business and instructed [financial and insurance] Advisors to use my MJSM email address for FIP-related business."

Shurwest also provided declarations from Michael T. Seabolt and Nicholas P. Johnson, who had worked for Shurwest, LLC under Schulze-Miller. Both stated they had been recruited by Schulze-Miller to work for MJSM and refer financial and insurance advisors to FIP. Shurwest was unaware of Seabolt's and Johnson's involvement with MJSM and FIP. Like Schulze-Miller, Seabolt and Johnson occasionally asked their Shurwest subordinates to perform clerical tasks for the benefit of MJSM without informing the subordinates. Seabolt and Johnson also

7

declared that any use of their Shurwest e-mail accounts to conduct FIP-related business was inadvertent, and they intended to use their MJSM e-mail accounts for that purpose.

Based on these declarations, Shurwest argued that Shurwest "did not purposefully direct any activities to the California forum or purposefully avail [itself] of the benefit of doing business there." "All of Ladalardo's acts in promoting the FIP product and the so-called "Structured Cash Flow" program were done without the knowledge, and not at the direction, of Shurwest." In its conclusion, Shurwest stated, "Shurwest was not involved in the FIP fraud that Plaintiff complains about, and Shurwest certainly was not involved in actions in furtherance of that fraud in California."

### 3. *Plaintiff's opposition*

In opposing the motion to quash, plaintiff argued that her claims arose from Shurwest's California activities, namely "Shurwest's marketing and sale of the IRA Reboot program in California." Plaintiff contended Shurwest could not disclaim its involvement in FIP, because a high-level employee, Shulze-Miller, promoted FIP and used other Shurwest employees for this purpose. Plaintiff also disputed Shurwest's characterization of her causes of action as limited to the FIP investment, arguing that Shurwest had authorized Ladalardo to sell life insurance through Shurwest, and he had sold plaintiff "an unaffordable and unnecessary IUL policy."

Plaintiff requested the trial court take judicial notice of, inter alia, pages from the California Department of Insurance's website indicating Shurwest's and its president's licenses to conduct insurance business in California, pages from Shurwest's website discussing "Product Philosophy" and how the company

8

partners with advisors, and archived pages of Shurwest's website containing descriptions of some of Shurwest's programs, including the IRA Reboot program, and biography pages for Schulze-Miller, Seabolt, and Johnson. Plaintiff argued that her judicially noticeable evidence showed that Shurwest was "the architect of the IRA Reboot program" which it "marketed nationwide," that Shulze-Miller was a managing agent of Shurwest, and that Shurwest conducted insurance activities in California.

Plaintiff asked the trial court to deny the motion to quash, or in the alternative, to allow her to conduct jurisdictional discovery. Plaintiff contended discovery "is likely to show that Shurwest's employees regularly traveled to California or directed their conduct to California to train, market to, or otherwise do business with California-based insurance agents such as [Heritage, its defendant officers, and Ladalardo]."

Shurwest filed a reply again emphasizing the lack of evidence of Shurwest's control over other defendants or its involvement with FIP. Shurwest argued jurisdictional discovery was unwarranted because "[e]ven if Shurwest had any contacts with California, these contacts would not be related to Plaintiff's complaints that she was deceived and forced to purchase FIP products." Shurwest also opposed plaintiff's request for judicial notice, arguing the documents proffered by plaintiff were irrelevant to the issue of personal jurisdiction, and plaintiff had failed to provide "sufficient, reliable, and trustworthy sources of information."

### 4. *Trial court's ruling*

The trial court sustained Shurwest's objections to plaintiff's request for judicial notice. It ruled it did not have general

jurisdiction over Shurwest for lack of "substantial, continuous and systematic contact." It further ruled that plaintiff "offers insufficient showing" to support specific jurisdiction. The court stated, "As [Schulze-]Miller is not an agent of Shurwest, she does not provide the 'contact' requirement. There is insufficient evidence of any other claimed entity being an agent of Shurwest. Therefore, Shurwest has no 'contact' with California."

The trial court granted Shurwest's motion to quash. Its written order did not address plaintiff's request for jurisdictional discovery, implicitly denying it.[2] Plaintiff timely appealed.[3]

## DISCUSSION

On appeal, plaintiff does not contend that the trial court should have denied Shurwest's motion to quash outright. Rather, plaintiff argues the trial court abused its discretion by granting the motion without first allowing plaintiff to conduct jurisdictional discovery. Plaintiff further argues the trial court abused its discretion by denying her request for judicial notice, and asks that we consider the documents the trial court refused to consider in evaluating whether she made a sufficient showing to justify jurisdictional discovery.

We conclude that, even if arguendo the trial court properly denied the request for judicial notice, it nonetheless abused its discretion by denying plaintiff jurisdictional discovery. We

---

[2] The trial court's written order indicates the court held a hearing on Shurwest's motion to quash, along with various motions filed by other defendants in the case. The appellate record does not contain a reporter's transcript of that hearing.

[3] "[A]n order granting a motion to quash service of summons" is appealable. (Code Civ. Proc., § 904.1, subd. (a)(3).)

10

therefore need not and do not reach plaintiff's arguments concerning her request for judicial notice.

## A.    Governing Law and Standard of Review

"California courts may exercise personal jurisdiction on any basis consistent with the Constitutions of California and the United States.  (Code Civ. Proc., § 410.10.)  The exercise of jurisdiction over a nonresident defendant comports with these Constitutions 'if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate " 'traditional notions of fair play and substantial justice.' " ' [Citation.]" (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*.)  "[T]he minimum contacts test asks 'whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.' [Citation.]" (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1061.)

" 'Personal jurisdiction may be either general or specific.  A nonresident defendant may be subject to the general jurisdiction of the forum if his or her contacts in the forum state are "substantial . . . continuous and systematic." [Citations.]' [Citation.]" (*Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 553 (*Jayone Foods*), last bracketed insertion added.)  " 'If the nonresident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, he or she still may be subject to the specific jurisdiction of the forum . . . .' [Citation.]" (*Ibid.*)

"When determining whether specific jurisdiction exists, courts consider the ' "relationship among the defendant, the forum, and the litigation." ' [Citation.]  A court may exercise

11

specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" ' [citation]; and (3) ' "the assertion of personal jurisdiction would comport with 'fair play and substantial justice' " ' [citation]." (*Pavlovich, supra,* 29 Cal.4th at p. 269.)

When a defendant moves to quash service of process for lack of jurisdiction, "the plaintiff must carry the initial burden of demonstrating facts by a preponderance of evidence justifying the exercise of jurisdiction in California." (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 110 (*Automobile Antitrust Cases*).) "The plaintiff must do more than merely allege jurisdictional facts. It must present evidence sufficient to justify a finding that California may properly exercise jurisdiction over the defendant." (*Ibid.*) "Once the plaintiff satisfies the initial burden of proof of showing a defendant's minimum contacts in California, the burden shifts to the defendant to present a compelling case demonstrating that the exercise of jurisdiction by our courts would be unreasonable." (*Id.* at pp. 110–111.)

"A plaintiff attempting to assert jurisdiction over a nonresident defendant is entitled to an opportunity to conduct discovery of the jurisdictional facts necessary to sustain its burden of proof. [Citation.] In order to prevail on a motion for a continuance for jurisdictional discovery, the plaintiff should demonstrate that discovery is likely to lead to the production of evidence of facts establishing jurisdiction." (*Automobile Antitrust Cases, supra,* 135 Cal.App.4th at p. 127.) We review a trial court's denial of a request for jurisdictional discovery for abuse of discretion. (*Ibid.*)

**B.**     **Plaintiff Is Entitled To Conduct Jurisdictional Discovery**

The trial court in its ruling focused on the concept of agency, finding insufficient evidence that Shulze-Miller or "any other claimed entity" was "an agent of Shurwest." On this basis, the trial court concluded plaintiff had failed to show Shurwest had contacts with California.

Assuming arguendo the evidence was insufficient to prove that Shulze-Miller, Ladalardo, or others were Shurwest's agents, an issue we do not decide, the activity of agents is not the only means by which a trial court may assume jurisdiction over an out-of-state defendant. In other words, a defendant may have contacts with a forum other than agents acting within that forum. Notably, sale of a defective product to California consumers, including through an intermediary, can subject a foreign defendant to specific jurisdiction in California. (See *Automobile Antitrust Cases*, *supra*, 135 Cal.App.4th at p. 115 ["Even an indirect effort to serve a California market for a manufacturer's product may reasonably make that manufacturer subject to suit in California if its product has caused injury."].)

*Jayone Foods* is illustrative. There, California residents sued Jayone Foods, a California importer and distributor, for selling an allegedly dangerous cleaning product to a Los Angeles retail store. (*Jayone Foods*, *supra*, 31 Cal.App.5th at p. 548.) Jayone Foods in turn filed a cross-complaint against Aekyung Industrial Co. Ltd. (Aekyung), a Korean manufacturer and distributor that sold the cleaning product to Jayone Foods. (*Ibid.*) The trial court granted Aekyung's motion to quash service of summons for lack of general or specific jurisdiction. (*Id.* at pp. 551–552.)

13

Our colleagues in Division Seven reversed the trial court, concluding that Jayone Foods had made a sufficient showing to establish specific jurisdiction. (*Jayone Foods*, *supra*, 31 Cal.App.5th at p. 565.) The court held that Aekyung "purposefully availed itself of the benefits of doing business in California" by "engag[ing] in a number of direct sales transactions with multiple California distributors of its consumer products," including Jayone Foods. (*Id.* at p. 556.) "Aekyung did not merely place its products into the stream of commerce with an awareness that they might end up in California. Rather, Aekyung purposefully directed its activities toward California businesses when it repeatedly sold its products to various California distributors over a seven-year period. Aekyung also purposefully derived benefits from its activities in California when it generated almost $2 million in revenue from these California sales. In so doing, Aekyung purposefully availed itself of the benefits of doing business in California and reasonably could expect to be subject to the jurisdiction of California courts." (*Id.* at p. 559.)

The court further concluded that the controversy "related to or arises out of Aekyung's contacts with California." (*Jayone Foods*, *supra*, 31 Cal.App.5th at p. 559.) The undisputed facts established that, during the time period covering the injuries alleged by plaintiffs, Jayone Foods had sold bottles of the allegedly harmful cleaning product it had imported from Aekyung. (*Id.* at p. 561.) Finally, the court held that Aekyung had failed to show the exercise of specific jurisdiction would be unfair or unreasonable. (*Id.* at p. 563.)

It follows from *Jayone Foods* that to the extent Shurwest was involved in the sale of products to California consumers, and

14

those products caused harm, Shurwest could be subject to specific jurisdiction in California, depending on the nature and extent of Shurwest's involvement. This is so regardless of whether those sales were through intermediaries, and regardless of whether those intermediaries were Shurwest's legal agents.[4]

A key difference between *Jayone Foods* and the instant case, however, is that in *Jayone Foods*, the party opposing the motion to quash had a direct business relationship with Aekyung, and thus had significant knowledge of Aekyung's business in California. In the instant case, plaintiff did not deal directly with Shurwest, and therefore cannot easily obtain information about Shurwest's business in California without the benefit of discovery. (*1880 Corp. v. Superior Court of City and County of San Francisco* (1962) 57 Cal.2d 840, 843 ["The facts relating to whether a corporation has been doing business in this state so as to make it amenable to suit . . . are ordinarily within the knowledge of the officers of the corporation, and there is no sound reason why a plaintiff should be deprived of this source of information."].)

It is also evident on the record before us that "discovery is likely to lead to the production of evidence of facts establishing jurisdiction." (*Automobile Antitrust Cases*, *supra*, 135 Cal.App.4th at p. 127.) Although Shurwest disclaimed any involvement in plaintiff's investment in FIP, in its motion to quash it did not deny participation in the sale of the IUL policy. In its brief on appeal, Shurwest makes this implicit concession

---

[4] We do not intend to suggest that *Jayone Foods* provides the sole theory or metric by which the trial court may assert jurisdiction over Shurwest, and this opinion should not be read to foreclose any future arguments plaintiff may wish to make.

15

explicit, stating it does "not disclaim involvement in [plaintiff's] IUL policy because [Shurwest] *was* involved in facilitating the sale of that policy to [plaintiff] through her financial advisors." (Italics added.) We may construe statements in appellate briefs as admissions against the party. (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1186, fn. 4.) Shurwest having admitted involvement in the sale of the IUL policy to plaintiff, plaintiff is entitled to explore the nature of that involvement in her effort to oppose the motion to quash.

Shurwest's arguments in support of the trial court's ruling center largely on the FIP allegations, and Shurwest contends it provided evidence, specifically the declarations from its former employees, fully exculpating it from those allegations. Shurwest claims further discovery would be "futile because whether Shurwest marketed or sold other insurance products or had other business relationships in California is not relevant to whether Shurwest sold or marketed to [plaintiff] the FIP product that forms the basis of her claims." Shurwest argues its facilitation of the sale of the IUL policy "is irrelevant to the trial court's specific jurisdiction analysis," which "rightly focused on whether Shurwest had forum-related contacts that gave rise to [plaintiff's] claims, which are predicated on the FIP product."

We disagree that plaintiff's claims are based solely on the FIP investment. The complaint alleged that Shurwest was responsible for a packaged product consisting of the IUL policy and the FIP investment, but plaintiff also alleged wrongdoing as to the IUL policy independent of the FIP investment. For example, plaintiff alleged that defendants convinced her to purchase the IUL policy although it "was not advisable for her needs," particularly given that she was already invested in a

16

suitable retirement product. Additionally, she alleged that Shurwest knew or should have known that she could not afford the policy. Thus, the controversy at issue arises not only from the FIP investment, but also from the IUL policy, and the latter potentially could provide a basis to assert jurisdiction over Shurwest.

As for the FIP allegations, it is not clear to us that the former employees' declarations definitively establish that Shurwest had no legal involvement, and that the FIP-related facts cannot also give rise to personal jurisdiction. Accepting the facts stated in the declarations as true, they establish that a national sales director for Shurwest, along with at least two other Shurwest employees, used Shurwest resources, including their Shurwest subordinates and Shurwest e-mail accounts, to conduct FIP-related business while simultaneously employed by Shurwest.

Shurwest's purported ignorance does not necessarily absolve it; for example, cases have held that "[a] principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud. The principal is liable although he is entirely innocent, although he has received no benefit from the transaction, and although the agent acts solely for his own purposes. Liability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that, from the point of view of the third persons, the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him [citations]." (*Reusche v. California Pacific Title Ins. Co.* (1965) 231 Cal.App.2d 731, 736.) Although we express no

17

opinion on the applicability of this principle here, it illustrates that an innocent principal may under some circumstances be liable for the acts of a rogue agent.  Plaintiff is therefore entitled to explore through discovery jurisdictional contacts related to the FIP transactions, as well as the IUL transactions.

In short, plaintiff's allegations provide an ostensible basis to assert specific jurisdiction over Shurwest, and the record supports plaintiff's position that discovery is likely to lead to additional facts establishing that jurisdiction, whether related to the IUL policy, the FIP investment, or both.  The trial court based its ruling to the contrary on a too-narrow view of jurisdictional contacts, and thus abused its discretion by granting the motion to quash without first permitting jurisdictional discovery.  (See *In re Charlisse C.* (2008) 45 Cal.4th 145, 159 ["a disposition that rests on an error of law constitutes an abuse of discretion"].)  Other than eschewing a fishing expedition, we express no opinion as to the appropriate scope of or mechanisms for that discovery.  The trial court may determine the scope and mechanisms on remand, subject to our holding that plaintiff is entitled to explore Shurwest's involvement both in the IUL policy and the FIP investment for purposes of contesting the motion to quash.

## DISPOSITION

The order granting defendants Shurwest, LLC and Shurwest Holding Company, Inc.'s motion to quash is reversed. The matter is remanded for plaintiff Gloria Salvador Rodillas to conduct jurisdictional discovery. Plaintiff is awarded her costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.