Filed 12/16/21  Kadow v. LG Chem CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| CODY KADOW, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LG CHEM, LTD., <br><br> Defendant and Respondent. | B309854 <br><br> (Los Angeles County Super. Ct. No. BC680355) |

APPEAL from an order and a judgment of the Superior Court of Los Angeles County, H. Jay Ford III, Judge.  Affirmed.

Alan Charles Dell'Ario; Levin Simes Abrams, William A. Levin and Angela J. Nehmens for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Trevor J. Ingold; Nelson Mullins Riley & Scarborough and Rachel Atkin Hedley for Defendant and Respondent.

—————————————————

Plaintiff Cody Kadow alleges he sustained second and third degree burns to his leg when a rechargeable spare battery he used for an electronic cigarette (e-cigarette) exploded in his pants pocket while he was in a parking lot in Westwood, California. Kadow brought suit for damages against the retailer that sold him the spare battery in California, along with one of the battery's distributors, various other entities, and several Doe defendants. Kadow later amended his complaint to substitute respondent LG Chem, Ltd. (LG Chem), a South Korean company that Kadow claims manufactured the battery in question, for one of the Doe defendants. LG Chem moved to quash service of summons for lack of personal jurisdiction, and the trial court ultimately granted the motion. Kadow appeals from that decision.

On appeal, Kadow bears the burden of establishing that LG Chem has sufficient minimum contacts with this forum to allow California's courts to assert personal jurisdiction over LG Chem. Kadow's principal contention is that specific (or case-linked) jurisdiction is proper because, although LG Chem offered evidence that it did not authorize its batteries to be distributed to California consumers for use in e-cigarette devices, LG Chem did sell batteries to customers located in this state during the three-year period preceding Kadow's injury.

We reject this argument because Kadow failed to show that sales of LG Chem's batteries to original equipment manufacturers and battery packers in California relate to Kadow's product liability claims for purposes of establishing specific jurisdiction in California. Kadow's other arguments are unpersuasive, including his assertion that jurisdiction in California is proper simply because no state in the country would

have general (or all-purpose) jurisdiction over LG Chem.  Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize only those facts relevant to this appeal.

On October 18, 2017, Kadow filed an unverified complaint for damages against Shenzhen Eigate Technology, Co., Ltd.; UVaper, LLC; Shenzhen XTAR Electronics Co., Ltd.; Shenzhen XTAR Technology, LLC; Hong Kong XTAR Co., Ltd.; Shenzhen MXJO Technology Co., Ltd.; Vapeway, LLC; and Does 1 through 50.[1]  Kadow asserted the following causes of action: (1) strict liability against all defendants; (2) negligence against all defendants; (3) breach of express warranty against all defendants; (4) breach of implied warranty against all defendants; (5) negligent misrepresentation against all defendants; (6) violation of the Consumer Legal Remedies Act against defendants Shenzhen XTAR Technology, LLC and Vapeway, LLC; and (7) violation of the Unfair Competition Law against all defendants.

Kadow alleges that in or around mid-2015, Kadow, a California resident, went to defendant Vapeway, LLC's store in Corona, California and purchased three "MXJO rechargeable lithium-ion 18650 batteries" for use with an e-cigarette, along

---

[1]  Shenzhen Eigate Technology, Co., Ltd.; UVaper, LLC; Shenzhen XTAR Electronics Co., Ltd.; Shenzhen XTAR Technology, LLC; Hong Kong XTAR Co., Ltd.; Shenzhen MXJO Technology Co., Ltd.; and Vapeway, LLC are not parties to this appeal.

with an MC1 XTAR charger.[2]  On December 1, 2015, Kadow was in a parking lot at the Ronald Reagan UCLA Medical Center located in Westwood, California.  An e-cigarette and one of the 18650 batteries purchased from Vapeway, LLC were in his front left pants pocket.  After Kadow got into his vehicle and closed the door, he "saw blue sparks emanating from his pant leg and heard what sounded like firecrackers screaming"; Kadow realized that "his left pant leg . . . was on fire."

Kadow opened the door and jumped out of the vehicle.  Kadow took off his pants after he saw "red and smoldering on his left leg . . . ."  At that point, he realized "[t]he battery was on the ground next to his car and was charred and had visibly exploded."  Kadow was later diagnosed with second and third degree burns on his left leg.  Kadow "underwent surgical removal of the damaged, burned tissue and foreign objects (debridement and tangential excision) and placement of a skin graft."  Kadow has been "left physically and emotionally scarred from the burns," and the "injuries [he] sustained, the treatment therefor, and the healing process were excruciatingly painful requiring prescribed scheduled medications . . . ."

On February 15, 2019, Kadow filed a form that amended the complaint to substitute LG Chem for Doe 31.  During the proceedings below, an LG Chem team leader attested that

---

[2]  The remainder of this paragraph and the following paragraph summarize relevant averments from the complaint. Additionally, as a shorthand, we refer to the 18650 lithium ion batteries at issue as 18650 batteries.

4

"LG Chem is a South Korean company with its headquarters and principal offices in Seoul, South Korea."[3]

Although the complaint alleged that Doe 31 was "in the business of designing, manufacturing, marketing, testing, promoting, selling, importing, and/or distributing the . . . 18650 . . . Batteries . . . purchased by [Kadow] . . . that [are] the subject of this lawsuit," Kadow does not aver that LG Chem sold him the battery that injured him. Instead, Kadow maintains that "[a]t some point after manufacture, LG [Chem] sold the [18650 battery] to a presently unknown distributor/reseller who in turn sold it to another distributor, defendant Shenzhen MXJO Technology Co., Ltd.[, which in turn] packaged it with a charger and sold it to Kadow's retailer, defendant Vapeway, LLC."

The aforementioned LG Chem team leader declared that "LG Chem does not design, manufacture, distribute, advertise, or sell 18650 [batteries] for use by individual consumers as replaceable, rechargeable batteries in electronic cigarette devices." He further attested that "LG Chem has no relationship with [defendant] Shenzhen MXJO [Technology Co., Ltd.]"; Shenzhen MXJO Technology Co., Ltd. appears to be a company located in China; and "LG Chem has never authorized Shenzhen MXJO [Technology Co., Ltd.] to advertise, distribute, or sell LG 18650 [batteries] re-wrapped as MXJO batteries, or to advertise, distribute, or sell LG 18650 [batteries] for use by individual consumers as replaceable, rechargeable batteries in

---

[3] The team leader did not identify the legal form of LG Chem's business enterprise (e.g., corporation, limited liability company, etc.), nor does LG Chem supply that information in its respondent's brief. This omission has no impact on our disposition of the instant appeal.

5

e-cigarette devices." The team leader also declared that "LG Chem has no relationship with Vapeway, LLC, UVaper, LLC, Shenzen [*sic*] Eigate Technology Co., Ltd., Shenzhen Xtar Electronics Co., Ltd., Shenzehn [*sic*] XTAR Technology, LLC, [or] Hong Kong XTAR Co., Ltd."

On July 11, 2019, LG Chem specially appeared for the purpose of moving to quash service of summons for lack of personal jurisdiction. On October 2, 2019, Kadow opposed the motion and sought leave to undertake jurisdictional discovery. LG Chem filed its reply brief on October 8, 2019. On October 16, 2019, the trial court found that Kadow failed to establish personal jurisdiction over LG Chem, granted Kadow's request to undertake jurisdictional discovery, and continued the hearing on the motion to quash to allow Kadow to conduct such discovery.[4]

On May 5, 2020, Kadow filed a supplemental opposition to LG Chem's motion to quash. Also on that date, Kadow filed copies of LG Chem's responses to Kadow's jurisdictional discovery requests. As discussed in greater detail in Discussion, part B, *post*, LG Chem admitted in its responses that from December 1, 2012 to December 1, 2015, it sold 18650 batteries to "certain specific California entities"—i.e., original equipment

_____

[4] Although the notice of ruling and the accompanying tentative ruling adopted by the court do not identify clearly when these rulings were issued, LG Chem claims that the trial court made these rulings on October 16, 2019 and Kadow does not dispute that assertion in his reply. (See *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

manufacturers and battery packers. LG Chem filed a supplemental reply brief on August 6, 2020. On August 13, 2020, the trial court denied LG Chem's motion to quash.

On August 24, 2020, LG Chem filed a petition for a writ of mandate directing the trial court to vacate its order denying the motion to quash and enter a new order granting the motion.[5] On October 6, 2020, we issued a notice pursuant to *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, wherein we informed the trial court of our intention to issue a peremptory writ in the first instance, and permitted that court to "avoid the issuance of" this peremptory writ by vacating the order denying LG Chem's motion to quash service of summons and instead issuing an order granting that motion (*Palma* notice). In the notice, "we agree[d] with [LG Chem] that . . . Kadow did not meet his burden to establish the court's specific jurisdiction[,]" and we stated that "[i]t does not matter for purposes of specific jurisdiction that [LG Chem] extensively sells its 18650 batteries into the California market, because this suit does not arise out of or relate to those sales or [LG Chem's] contacts with this forum."

On October 7, 2020, the trial court set a hearing on an order to show cause why the court should not vacate its order denying LG Chem's motion to quash and enter a new order granting the motion in light of our *Palma* notice. On October 19, 2020, Kadow filed a response to the court's order to show cause, and LG Chem filed a reply to Kadow's response on October 23, 2020.

---

[5] We, sua sponte, take judicial notice of LG Chem's writ petition. (Evid. Code, §§ 452, subd. (d), 459.)

7

On October 26, 2020, the trial court held a hearing on its order to show cause, vacated its prior order denying LG Chem's motion to quash, and granted LG Chem's motion. On November 13, 2020, the trial court issued an order that (1) reiterated its prior rulings (a) vacating its order that denied LG Chem's motion to quash and (b) entering a new order granting the motion; and (2) dismissed LG Chem from the action in accordance with its ruling on LG Chem's motion to quash. Kadow timely appealed.[6]

---

[6] Although Kadow's notice of appeal does not explicitly seek review of the November 13, 2020 order dismissing LG Chem from the action, Kadow's opening brief indicates he challenges the dismissal order as well. Because the order of dismissal is wholly derivative of the trial court's order granting the motion to quash, we liberally construe the notice of appeal as covering both orders. (See *In re J.F.* (2019) 39 Cal.App.5th 70, 75 ["A notice of appeal shall be ' "liberally construed so as to protect the right of appeal if it is *reasonably clear* what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' [Citations.]"]; see also Code Civ. Proc., § 904.1, subds. (a)(1) & (a)(3) [orders to quash service of summons and judgments are both appealable].) Furthermore, because we find no error in the trial court's ruling granting the motion to quash, and Kadow does not claim that the dismissal order would need to be reversed absent any defect in the order quashing service of summons, we affirm the dismissal order as well. (See Discussion, part A, *post* [noting that trial court orders are presumed correct]; Disposition, *post* [affirming the order quashing the service of summons].)

## DISCUSSION

### A. Applicable Law

"California's long-arm statute permits a court to exercise personal jurisdiction on any basis consistent with state or federal constitutional principles." (*Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 391 (*Rivelli*), citing, inter alia, Code Civ. Proc., § 410.10.) " 'The exercise of jurisdiction over a nonresident defendant comports with these Constitutions "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " [Citation.]' [Citation.]" (*Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 552 (*Jayone Foods, Inc.*).)

There are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." (*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court* (2021) 141 S.Ct. 1017, 1024 (*Ford Motor Co.*).) "General jurisdiction . . . extends to 'any and all claims' brought against a defendant," and is available only in a state where "a defendant is 'essentially at home' . . . . [Citation.]"[7] (See *Ford Motor Co.*, at p. 1024.) Conversely, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." (*Ibid.*)

---

[7] Kadow concedes that California does not have general jurisdiction over LG Chem. (*Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party. [Citations.]' [Citations.]"].)

" 'A court may exercise specific jurisdiction over a nonresident defendant only if: (1) "the defendant has purposefully availed himself or herself of forum benefits" [citation]; (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum' " [citation]; and (3) " 'the assertion of personal jurisdiction would comport with "fair play and substantial justice" ' " [citation.]' [Citation.]" (*Jayone Foods, Inc.*, *supra*, 31 Cal.App.5th at p. 553.)

These limitations on specific jurisdiction "derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.' [Citation.]" (See *Ford Motor Co.*, *supra*, 141 S.Ct. at p. 1025.) The "doctrine . . . provides defendants with 'fair warning'—knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign.' [Citations.]" (See *ibid.*) "The law of specific jurisdiction [also] seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." (*Ibid.*)

The first prong of the specific jurisdiction analysis requires the defendant to have "take[n] 'some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum State.' [Citation.] The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.' [Citation.] They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there."[8] (See *Ford Motor Co.*, *supra*, 141 S.Ct. at pp. 1024–1025.)

---

[8] The United States Supreme Court "has not agreed on" the precise circumstances under which a manufacturer's or

10

Because the doctrine of specific jurisdiction is intended "to adequately protect defendants foreign to a forum," "the phrase 'relate to' incorporates real limits" and "does not mean anything goes." (See *Ford Motor Co.*, *supra*, 141 S.Ct. at p. 1026.) "A defendant can thus 'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts." (See *id.* at p. 1025.) For instance, if a car manufacturer's contacts with the forum state provide it with " 'clear notice' of its exposure in that State to suits arising from local accidents involving its cars," then "[i]t could 'act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are [still] too great, severing its connection with the State.' [Citation.]" (See *id.* at p. 1027.)

A defendant may move "[t]o quash service of summons on the ground of lack of jurisdiction of the court over him or her." (Code Civ. Proc., § 418.10, subd. (a)(1).) " ' "When a defendant moves to quash service of process" [on jurisdictional grounds], "the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction." [Citation.]' . . . [Citation.]"

---

distributor's placement of a product into the stream of commerce is sufficient to give rise to purposeful availment—i.e., whether the fact that "the defendant's products knowingly and regularly flowed into the forum state or were part of a regular course of sale in the forum state" would be sufficient, or whether " '[a]dditional conduct of the defendant . . . indicat[ive of] an intent or purpose to serve the market in the forum State" is also necessary. (See *Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 598–602 [discussing the Supreme Court Justices' differing views on this question].) We need not resolve this issue to dispose of the instant appeal.

(*Jayone Foods, Inc.*, *supra*, 31 Cal.App.5th at p. 553.) "To meet this burden, . . . . [a] plaintiff must support its allegations with 'competent evidence of jurisdictional facts. Allegations in an unverified complaint are insufficient to satisfy this burden of proof.' [Citation.]" (*Rivelli*, *supra*, 67 Cal.App.5th at p. 393.)

If the plaintiff establishes "the first two requirements [of specific jurisdiction] (i.e., that the defendant has purposefully availed itself of the forum and the plaintiff's claims relate to or arise out of the defendant's forum-related contacts)" "by a preponderance of the evidence[,] . . . the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would be unreasonable." (See *Rivelli*, *supra*, 67 Cal.App.5th at p. 393.) "The [specific] jurisdictional analysis is intensely fact-specific. [Citation.] Indeed, the test for personal jurisdiction ' "is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." ' [Citations.]" (See *id.* at pp. 392–393.)

"On appeal, we independently review the trial court's legal conclusions as to whether a defendant's contacts with California justify requiring that defendant to mount a defense in the forum. [Citation.] If the facts giving rise to jurisdiction are conflicting, we will not disturb the trial court's express or implied factual determinations where supported by substantial evidence. [Citation.]" (*Rivelli*, *supra*, 67 Cal.App.5th at p. 393.) Additionally, " ' "[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. . . ." ' [Citation.]" (See *Yu v. University of La Verne* (2011) 196 Cal.App.4th 779, 787.)

The appellant bears the burden of rebutting this presumption of correctness, regardless of the applicable standard of review. (See *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368, 399 [indicating that an appellant must affirmatively show the trial court erred even if the de novo standard of review applies].)

## B. Kadow Fails to Establish His Claims Relate to LG Chem's Contacts with California

Kadow maintains that specific jurisdiction over LG Chem is proper because "LG [Chem] sells and distributes its 18650 [batteries] in California." In particular, Kadow contends LG Chem's 18650 batteries enter the United States through California ports, "transit through California[,] and . . . reach the ultimate purchasers located here." He further asserts that "[f]or the time period beginning 12/1/12 to 12/1/15, LG [Chem] entered into and maintained business relationships with California based customers as to the sale of LG lithium-ion 18650 batteries" and "derived revenue from these relationships."[9] Although Kadow does not argue that, for the purposes of specific jurisdiction, his claims "arise out of" the aforesaid business relationships LG Chem had with California based customers during that

---

[9] To support the assertions stated in the textual sentence accompanying this footnote, Kadow cites excerpts of the reply brief LG Chem filed during the proceedings below. The excerpts Kadow cites, however, do not describe LG Chem's business relationships with California customers, but they instead advance other arguments supporting LG Chem's position that Kadow failed to establish that specific jurisdiction is proper (e.g., Kadow may not impute forum contacts from another business enterprise to LG Chem).

timeframe, Kadow does contend his suit is "related to" those contacts with the forum.

Kadow's description of the evidence concerning LG Chem's contacts with California is vague and sometimes misleading. Although LG Chem admitted in its discovery responses that it "shipped LG lithium-ion 18650 batteries directly to California entities that arrived in California through California ports" from December 1, 2012 to December 1, 2015, LG Chem did not admit that it "intended and expected LG lithium-ion 18650 batteries to be purchased and used by California . . . consumers" during that timeframe. Rather, LG Chem admitted only that "[f]or the time period 12/1/12 to 12/1/15, LG Chem's customers in California were exclusively original equipment manufacturers and battery packers, which are sophisticated users who were informed that the cells were intended to be encased with protective circuitry . . . ." LG Chem also stated the batteries "were not intended nor authorized to be sold directly to individual consumers for use as standalone batteries" and that LG Chem "was not aware that any of its 18650 lithium ion battery cells were being sold to or used by individual customers as standalone replacement batteries in e-cigarette devices in California."

On appeal, LG Chem once again emphasizes that it did not authorize its 18650 batteries to be sold to California consumers as standalone replacement batteries in e-cigarette devices, and LG Chem insists that Kadow's claims do not arise out of or relate to "its sales of 18650 battery cells to sophisticated customers in California . . . ."

Assuming arguendo Kadow could potentially satisfy the relatedness prong even though LG Chem did not authorize its 18650 batteries to be sold to California consumers as standalone

batteries used in e-cigarettes, Kadow still has not shown that personal jurisdiction over LG Chem is proper.

We acknowledge that LG Chem purposefully availed itself of the privilege of conducting activities in California by shipping 18650 batteries to "original equipment manufacturers and battery packers" in California. (See *Ford Motor Co.*, *supra*, 141 S.Ct. at pp. 1024–1025 ["The contacts needed for [specific jurisdiction] often go by the name 'purposeful availment.' [Citation.] . . . They must show that the defendant deliberately 'reached out beyond its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there."].) That being said, Kadow still does not explain how these contacts would satisfy the second prong of a specific jurisdiction analysis, to wit, are the contacts "related enough to [Kadow's] suit[]" to give rise to personal jurisdiction? (See *id.* at p. 1031.)

In fact, Kadow's briefing does not even identify or describe the operations of the "California based customers" to which LG Chem shipped its 18650 batteries. Kadow cites his opposition to the motion to quash for the proposition that "[p]rior iterations of [LG Chem's] website include a list of its 'major customers' which include worldwide brands such as LG Electronics, Apple (headquartered in Cupertino), Dell, Hewlett Packard (headquartered in Palo Alto), Bosch, Asus, Lenovo, Stanley Black&Decker, and others." Kadow's trial court briefing is not evidence of LG Chem's forum-related contacts. (See *Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276, 281, fn. 5 [holding that " 'unsworn averments in a memorandum of law prepared by counsel do not constitute evidence' "].) In any event, this excerpt from Kadow's opposition does not clarify whether

15

these customers are the original equipment manufacturers and battery packers to which LG Chem shipped the 18650 batteries.

Without more detailed evidence regarding the nature and extent of LG Chem's forum contacts, we cannot conclude that LG Chem had " 'fair warning' " that its sales to original equipment manufacturers and battery packers would subject it to our state's jurisdiction for the instant product liability action. (See *Ford Motor Co.*, *supra*, 141 S.Ct. at p. 1025.) Kadow's argument thus falls far short of satisfying his burden in this "intensely fact-specific" jurisdictional analysis.[10] (See *Rivelli*, *supra*, 67 Cal.App.5th at p. 392.)

Kadow nonetheless suggests that LG Chem's 18650 batteries reach *consumers* located in California. Specifically, he observes that an excerpt from LG Chem's website indicates that "[s]tandard-sized cylindrical batteries are manufactured for 'Laptop, powerbank, power tool, electric bicycle, electric motorcycle, vacuum cleaner, [and] garden tool' uses." From this website excerpt, Kadow concludes "California jurisdiction exists over claims involving an exploding 18650 [battery] in a Dell laptop . . . ." Conspicuously absent from Kadow's briefing is a citation to any evidence showing that LG Chem's 18650 batteries have been sold to California consumers in Dell laptop computers. This omission is fatal. (See *Rivelli*, *supra*, 67 Cal.App.5th at p. 393 ["[On a motion to quash, a] plaintiff must support its allegations with 'competent evidence of jurisdictional facts. . . .' [Citation.]"].)

---

[10] Kadow does not argue on appeal that the trial court should have permitted him to undertake further discovery on LG Chem's forum contacts.

16

Kadow claims that "[t]he key question is whether LG [Chem] 'serves *a* market' for the 18650 [battery] in California." (Italics added.) It appears that Kadow relies upon the *Ford Motor Co.* case for this proposition, given that he includes the following quotation from the decision in his briefing: " '[T]his Court has stated specific jurisdiction attaches in cases identical to the ones here—when a company like Ford serves a market for a product in the forum State and the product malfunctions there.' " (Quoting *Ford Motor Co.*, *supra*, 141 S.Ct. at p. 1027.)

Kadow's reliance on *Ford Motor Co.* is unavailing. Under Kadow's reading of the case, personal jurisdiction over a consumer's product liability claim would potentially be proper in any and all jurisdictions that are part of that product's global supply chain. Yet this sweeping theory of specific jurisdiction would run afoul of *Ford Motor Co.* because the theory would eviscerate the "real limits" imposed by the relatedness prong, and it would also interfere with the due process clause's objective of allowing a defendant to " 'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts." (See *Ford Motor Co.*, *supra*, 141 S.Ct. at pp. 1025–1026.)

Despite Kadow's arguments to the contrary, *Ford Motor Co.* is not like the case before us. Far from it. In *Ford Motor Co.*, a driver of a Ford Explorer was injured in Montana when a tire tread separated from a rear tire on the vehicle, and a passenger in a Ford Crown Victoria was injured in a car accident in Minnesota when the passenger's airbag did not deploy. (See *Ford Motor Co.*, *supra*, 141 S.Ct. at p. 1023.) Although the particular vehicles that allegedly malfunctioned were not designed, manufactured, or sold in Montana or Minnesota, Ford had "for

17

many years" advertised, serviced, and sold (directly or through its intermediaries) (a) Ford Explorers to consumers in Montana and (b) Crown Victorias to consumers in Minnesota.  (See *id.* at pp. 1023–1024, 1028.)  The high court found that because "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States," "the connection between the plaintiffs' claims and Ford's activities in those States . . . [was] close enough to support specific jurisdiction."  (See *id.* at pp. 1028, 1032.)  The *Ford Motor Co.* court further declared that "[a]n automaker regularly marketing a vehicle in a State . . . has 'clear notice' that it will be subject to jurisdiction in the State's courts when the product malfunctions there (regardless where it was first sold)."  (See *id.* at p. 1030.)

In contrast, as we noted earlier in this part, Kadow has not offered any evidence showing the 18650 batteries LG Chem supplies to sophisticated customers ever reach California consumers.  Furthermore, whereas a car manufacturer would expect that if it systematically advertised, serviced, and sold a vehicle in a state, it could be haled into that state's courts for suits arising from accidents involving that type of vehicle, Kadow has not shown that LG Chem had clear notice that its sales of 18650 batteries to certain entities in this forum would subject LG Chem to jurisdiction for Kadow's product liability suit. Because Kadow does not offer any evidence describing the forum activities of the original equipment manufacturers and battery packers that acquired these batteries, we have no means of determining whether the risks of litigation LG Chem reasonably anticipated from these forum sales in any way resembled the product liability claims Kadow asserts for personal injuries

18

resulting from an exploding spare battery he used for an e-cigarette device.

In sum, Kadow has not demonstrated that his claims against LG Chem are sufficiently related to its forum contacts to give rise to specific jurisdiction.

## C. Kadow's Remaining Arguments Are Unpersuasive

Kadow contends that a federal district court in a product liability action concerning one of LG Chem's 18650 batteries found that California had personal jurisdiction over LG Chem notwithstanding its assertions that the battery reached the plaintiff through an unauthorized distribution channel, the battery was packaged in an unauthorized manner, and LG Chem had not authorized the battery to be used in e-cigarettes. (Citing *Berven v. LG Chem, Ltd.* (E.D. Cal., Apr. 18, 2019, No. 1:18-CV-01542-DAD-EPG) [2019 WL 1746083, at p. *11] (*Berven*), report and recommendation adopted (E.D. Cal., Sept. 26, 2019, No. 1:18-CV-01542-DAD-EPG) [2019 WL 4687080, at pp. *2–3].)

In *Berven*, the plaintiff alleged she had been injured in California when a 18650 battery manufactured by LG Chem exploded in her e-cigarette. (See *Berven*, *supra*, [2019 WL 1746083, at p. *1].) The federal district court denied LG Chem's motion to dismiss for lack of personal jurisdiction and granted the plaintiff's motion for leave to amend the complaint to add jurisdictional allegations. (See *id.* at pp. *1, *14.)

The proposed amended pleading at issue in *Berven* averred that LG Chem had provided lithium ion batteries to distributors in California with the reasonable expectation that they would be used in this state, and that LG Chem also sold 18650 batteries directly to consumers in California. (See *Berven*, *supra*, [2019 WL 1746083, at pp. *1–2, *6, *9 & fn. 1].) The proposed

19

amendment further averred that LG Chem sold substandard 18650 batteries to distributors with the expectation that such batteries would "end up in the electronic cigarette market in California." (See *id.* at p. \*3.) The district court assumed that these allegations were true for the purposes of the motion to dismiss and concluded they established California had specific jurisdiction over LG Chem under a stream of commerce theory. (See *id.* at pp. \*7, \*9–11, \*14.) *Berven* observed that on a motion to dismiss for lack of personal jurisdiction in federal court, "[u]ncontroverted allegations in the complaint must be taken as true," and that "for purposes of [LG Chem's] motion," "LG Chem d[id] not contest . . . the plethora of contacts alleged in the amended complaint." (See *id.* at pp. \*7, \*9.)

In contrast, our precedents require Kadow to offer competent evidence in order to defeat LG Chem's motion to quash. (*Rivelli*, *supra*, 67 Cal.App.5th at p. 393 ["[P]laintiff must do more than make allegations" but instead, "must support its allegations with 'competent evidence of jurisdictional facts. . . .' [Citation.]"].) As explicated in Discussion, part B, *ante*, Kadow has not directed us to any competent evidence showing that LG Chem intended or expected its 18650 batteries to reach consumers in California. Rather, LG Chem's discovery responses show only that it sold the batteries to original equipment manufacturers and battery packers in California. (See Discussion, part B, *ante*.) Thus, *Berven* is of no assistance to Kadow.

Further, Kadow suggests that the trial court somehow has personal jurisdiction over LG Chem because Kadow cannot assert his claims against that entity in any state in this country. Specifically, Kadow repeatedly declares that "Kadow does not . . .

20

have a domestic forum where general jurisdiction over LG [Chem] exists" and "[f]airness considerations apply to the plaintiffs, too." Kadow's argument overlooks the fact that the doctrine of specific jurisdiction is intended primarily to safeguard the due process rights of the defendant being haled into court and not the interests of the plaintiff in obtaining a convenient forum. (See *Ford Motor Co.*, *supra*, 141 S.Ct. at pp. 1024–1025 ["The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant. . . . [¶] . . . [¶] These rules [concerning specific jurisdiction] reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.' [Citations.]"]; *Walden v. Fiore* (2014) 571 U.S. 277, 284 ["Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. [Citation.] We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. [Citations.]"].)

Furthermore, although Kadow's argument is not altogether clear, Kadow seems to rely on Justice Alito's and Justice Gorsuch's respective concurring opinions from the *Ford Motor Co.* decision for the proposition that jurisdiction is proper because LG Chem conducts "extensive business" operations in the United States, including in California; Kadow is a California resident; Kadow purchased the battery at issue in California; and Kadow was injured in this state. (Citing *Ford Motor Co.*, *supra*, 141 S.Ct. at p. 1032 (conc. opn. of Alito, J.); *id.* at pp. 1036–1039 (conc. opn. of Gorsuch, J.).)

21

We reject Kadow's argument insofar as he asks us to abandon binding precedent requiring us to undertake a minimum contacts analysis to assess personal jurisdiction. (See *People v. Amadio* (1971) 22 Cal.App.3d 7, 14 ["[A] concurring opinion is not the opinion of the court and is not binding."]; *Karuk Tribe of Northern California v. California Regional Water Quality Control Bd., North Coast Region* (2010) 183 Cal.App.4th 330, 352 ["[W]e *are* bound by decisions of the United States Supreme Court in the construction and application of federal law."]; see, e.g., *Ford Motor Co.*, *supra*, 141 S.Ct. at pp. 1024–1025 (maj. opn. of Kagan, J.) [elucidating the minimum contacts framework].)

To the extent Kadow claims that the approaches undertaken in these concurring opinions are nevertheless consistent with, and persuasive authority regarding the proper application of, the minimum contacts test, Kadow fails cogently to argue that point. (See *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 (*Hodjat*) ["[A]n appellant is required to not only cite to valid legal authority, but also explain how it applies in his case."]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) [" 'Appellate briefs must provide argument and legal authority for the positions taken. . . . The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' [Citations.]"].)

Kadow also claims that "[t]he use of 18650's in e-cigarettes is so well known to LG [Chem]" that it "warns about the use on its website." Kadow does not claim that these warnings in any way indicate that LG Chem was aware that its batteries reached e-cigarette consumers *in California*, let alone that such transactions were the product of LG Chem's efforts to conduct

22

business in this state.  Accordingly, Kadow has failed to show that LG Chem's admonitions regarding e-cigarette use have any bearing on our jurisdictional analysis.  (See *Ford Motor Co.*, *supra*, 141 S.Ct. at pp. 1024–1025 ["[A] tribunal's authority depends on the defendant's having such 'contacts' *with the forum State* that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.' [Citation.] . . . . [¶] . . . [¶] . . . The contacts *must be the defendant's own choice* and not 'random, isolated, or fortuitous[,]' [citation]," italics added].)

Lastly, Kadow claims that LG Chem "has 'fair warning' that it could be subject to suit here in claims arising from its 18650 batteries" because it "has been held to answer in at least two California Superior Courts" and "Division Seven, the Third District and the Supreme Court have declined to review and overturn these decisions."  Kadow's failure to provide any description of these other cases forecloses his reliance upon them. (See *Hodjat*, *supra*, 211 Cal.App.4th at p. 10; *Cahill*, *supra*, 194 Cal.App.4th at p. 956; see also *Rivelli*, *supra*, 67 Cal.App.5th at p. 392 ["The [specific] jurisdictional analysis is intensely fact-specific."].)  We also note that Kadow's reliance upon trial court orders is improper.  (See *Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 761 ["To the extent [the petitioner] offers [a trial court order] as legal authority supporting her position, the request is improper. . . .  [A] written trial court ruling has no precedential value."].)

Because Kadow fails to show the trial court erred in granting LG Chem's motion to quash, we do not disturb that ruling.

## DISPOSITION

We affirm the order granting respondent LG Chem, Ltd.'s (LG Chem's) motion to quash service of summons and the judgment dismissing LG Chem from the action. LG Chem is entitled to its costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.